UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                    )
                                          )        Case No. 24-16558-JGR
ASPEN ELECTRONICS                         )
MANUFACTURING, INC.                       )        Chapter 11, Subchapter V
    Debtor.                               )

**ORDER CONFIRMING CORRECTED SECOND AMENDED PLAN OF
REORGANIZATION DATED AUGUST 27, 2025**

The Corrected Second Amended Plan Dated August 27, 2025 (Docket No. 220) ("Plan") under Chapter 11 Subchapter V of the Bankruptcy Code filed by Aspen Electronics Manufacturing, Inc. (the "Debtor") having come before the Court for confirmation, with any objections to confirmation of the Plan having been withdrawn or resolved, the Court having considered the Declaration of Mr. Giao Le, President of the Debtor, in Support of Confirmation of the Plan, the Court having reviewed the file, finds and Orders as follows:

    1.    That the Debtor has complied with all applicable provisions of Chapter 11, Subchapter V of the Bankruptcy Code and the Plan meets the requirements of Sections 1190 and 1191(a) of the Bankruptcy Code.

    2.    The provisions of Chapter 11 of the Bankruptcy Code have been complied with, in that the Plan has been proposed in good faith and not by any means forbidden by law.

    3.    That all insiders involved in the Debtors' post-confirmation activities are disclosed in the Plan and the exhibits thereto along with their relationship to and compensation from the Debtors.

    4.    That there exists no governmental regulatory commission having jurisdiction over the Debtors on setting rates and fees.

    5.    That each holder of a claim or interest has accepted the Plan or will receive or retain under the Plan property of a value, as of the Effective Date of the Plan[1], that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

    6.    That all payments made or proposed by the Debtors under the Plan or by any other person for services or costs and expenses in or in connection with the Plan or incident to the case have been fully disclosed to the Court and are reasonable or will be subject to approval of the Court.

---

[1] Capitalized terms not defined in this order shall have the meanings ascribed to them in the Plan.

7.    That all of attorney fees and fees to the Subchapter V Trustee incurred pre-confirmation shall be subject to Court approval as to reasonableness pursuant to the applicable provisions of the Bankruptcy Code.

8.    That the Debtor has filed a Summary of Voting Results which will be amended by a Settlement Agreement entered into between the Debtor and Holzman and Horner (attached hereto as Exhibit A), whereby all classes of creditors have accepted the Plan or are deemed to have accepted the Plan.

9.    That the Plan is fair and equitable and does not discriminate unfairly, and further allows creditors to receive more than they would otherwise receive in a Chapter 7 as to each Debtor.

10.   That on the Effective Date of the Plan, all property of the estate will revest in the Debtors free and clear of all liens and claims, except as otherwise provided in the Plan or this Order.

11.   That the Debtors shall receive a discharge pursuant to Section 1141(d) upon the Effective Date of the Plan of all claims in accordance with 11 U.S.C. 1191(a) and 1192. Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan.  Any obligation or note, previously in default, so modified, shall be cured as modified as of the Effective Date.

12.   That any objections to confirmation of the Plan having been withdrawn, resolved by Stipulation, resolved by amendment. or overruled.

13.   The Plan otherwise meets the requirements for confirmation specified under 11 U.S.C. §1129.

**IT IS HEREBY ORDERED**

That the Corrected Second Amended Plan Dated August 27, 2025 (Docket No. 220) is hereby **CONFIRMED**, and further,

That the Settlement Agreement, attached as Exhibit A, is hereby approved, incorporated into the terms of this Order, and hereby made an Order of this Court.

The Debtor shall serve a copy of this order on all creditors and parties in interest and file a Certificate of Service evidencing the same.

DONE and entered this   5th   day of November, 2025 at Denver, Colorado.

BY THE COURT:

_____

Honorable Joseph G. Rosania, Jr.
United States Bankruptcy Court Judge

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into by and among Holzman Horner, Chartered ("Holzman Horner") on the one hand, and the Aspen Electronics Manufacturing Inc. Employee Stock Ownership Plan ("ESOP"), Giao Le, not in his individual capacity, but solely in his capacity as trustee of the Aspen Electronics Manufacturing Inc. Employee Stock Ownership Trust ("Trustee"), Aspen Electronics Manufacturing Inc. Employee Stock Ownership Trust ("Trust"), and Aspen Electronics Manufacturing Inc. ("Aspen") on the other hand. Each of the parties is referred to below individually as a "Party" and collectively as the "Parties." Additionally, the ESOP, the Trustee, the Trust and Aspen are collectively referred to below as the "Aspen Parties." The Parties have entered into this Settlement Agreement as a compromise for the complete, final resolution and settlement of all claims and differences among them from the beginning of the world to the date of these presents.

## RECITALS

WHEREAS, on September 15, 2021, the Parties entered into certain contracts for legal services, which are attached as exhibits 1 and 2, and are collectively referred to below as the "Contracts"; and

WHEREAS, thereafter, a dispute arose about the Parties' respective performances, or lack thereof, under the Contracts;

WHEREAS, on December 23, 2021, Holzman Horner filed an arbitration demand with JAMS against the Aspen Parties asserting claims against the Aspen Parties and, thereafter, the Aspen Parties asserted counterclaims against Holzman Horner (the "Arbitration");

WHEREAS, on October 29, 2024, a final corrected award was issued in the Arbitration in favor of Holzman Horner and against the Aspen Parties (the "Award");

WHEREAS, on November 1, 2024 (the "Petition Date"), Aspen filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court") initiating Bankruptcy Case No. 24-16558-JGR (the "Bankruptcy Case");

WHEREAS, in the Bankruptcy Case, Holzman Horner filed Proof of Claim No. 7 (as amended) (the "HH Proof of Claim");

WHEREAS, on September 19, 2025, Aspen filed its Corrected Second Amended Chapter 11 Subchapter V Plan of Reorganization (the "Second Amended Plan") in the Bankruptcy Case;

WHEREAS, Holzman Horner voted against confirmation of the Second Amended Plan and filed its Objection to Confirmation of the Second Amended Plan, in which it objected, among other things, to the proposed treatment of the HH Proof of Claim under the Second Amended Plan;

WHEREAS Holzman Horner also filed the following pleadings in the Aspen Bankruptcy Case:

(i)     Objection to Aspen's Application to Employ Taft Stettinius & Hollister LLP as Special Counsel (Dckt No. 219); and

(ii)    Motion for Relief from the Automatic Stay (Dckt No. 233);

WHEREAS, Aspen objected to Holzman Horner's Motion for Relief from the Automatic Stay; and

WHEREAS, without any acknowledgement of wrongdoing, fault, or liability, the Parties now desire to resolve and settle any and all claims and counterclaims between them, including but not limited to the claims asserted or threatened in the Arbitration and in the Bankruptcy Case, in accordance with the terms set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the recitals set forth above, which are considered a part of this Agreement, the mutual covenants, promises, undertakings, and agreements contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.  Bankruptcy Court Approval. The Agreement is subject to, and shall not become effective, until it is approved by the Bankruptcy Court (the "Effective Date"). Upon execution and delivery of this Agreement, Aspen's bankruptcy counsel shall seek approval of this Agreement in conjunction with the Bankruptcy Court's approval of the Second Amended Plan. Aspen and Holzman Horner shall request that the Bankruptcy Court approve the Agreement by incorporating this Agreement as an exhibit to its Order Approving Confirmation of the Second Amended Plan.

2.  Upon Bankruptcy Court approval of this Agreement, Holzman Horner shall simultaneously be deemed to have:

     a.  Withdrawn its vote against the Second Amended Plan and voted in favor of the Second Amended Plan;

     b.  Withdrawn its Objection to the Second Amended Plan;

     c.  Withdrawn its Motion for the Relief from the Automatic Stay;

     d.  Withdrawn its Objection to the Application to Employ Taft Stettinius & Hollister LLP as Special Counsel; and

     e.  Amended its Proof of Claim to one million seven hundred fifty thousand dollars ($1,750,000.00) and waived any and all additional fees, costs, and

interest associated with the Award. Holzman and Horner's receipt of the $1,750,000.00 shall constitute a full and final satisfaction of the Award.

    f.    Nothing in this Agreement shall prevent either Aspen or Holzman and Horner from filing a notice in the Bankruptcy Case regarding the amendment to the HH Proof of Claim in accordance with the terms of this agreement.

3.    <u>Cash Payment.</u> Holzman and Horner shall be paid as a Class 3 claimant as provided in the Second Amended Plan. On or before the Effective Date of the Second Amended Plan (as defined therein), Aspen will pay Holzman Horner a one-time cash payment of ONE MILLION SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($1,750,000.00). Payment shall be made by wire transfer of immediately available funds to an account designated by Holzman Horner in writing.

4.    <u>Releases.</u>

    a.    <u>Holzman Horners' Release.</u> Holzman Horner, on its behalf and each of its current or former agents, subsidiaries, affiliates, owners, officers, directors, employees, predecessors, successors, assigns, attorneys and representatives releases the Aspen Parties, including their current or former agents, predecessors, successors, assigns, attorneys, trustees, trust beneficiaries, and representatives from any and all claims, defenses, counterclaims, cross-claims, third-party claims, causes of action, rights, debts, contracts, agreements, demands for payment, demands for attorneys' fees, or any other relief, and any obligations of any nature, in law or equity, and whether or not such claim is liquidated, contingent, or otherwise not matured, from the beginning of time to the Effective Date.



        b.     <u>The Aspen Parties' Release.</u> The Aspen Parties, including their current or former sponsors, administrators, fiduciaries, parties in interest, participants, beneficiaries, agents, subsidiaries, affiliates, owners, officers, directors, employees, predecessors, successors, assigns, attorneys and representatives releases Holzman Horner, including its current or former agents, predecessors, successors, assigns, attorneys and representatives from any and all claims, defenses, counterclaims, cross-claims, third-party claims, causes of action, rights, debts, contracts, agreements, demands for payment, demands for attorneys' fees, or any other relief, and any obligations of any nature, in law or equity, and whether or not such claim is liquidated, contingent, or otherwise not matured, from the beginning of time to the Effective Date.

        c.     <u>Waiver of Unknown Claims.</u> It is understood and agreed that the releases set forth in this Agreement extend to all claims of every kind, nature and description whatsoever, known or unknown, suspected or unsuspected.

        d.     <u>Limitation on Releases; Survival of Contracts.</u> Notwithstanding any of the foregoing, the Parties are not releasing, and expressly are preserving: (i) all rights, remedies and claims arising under and out of this Agreement; and (ii) all rights, remedies and claims arising under and out of the Contracts that accrue on or after the Effective Date.

5.     <u>No Third-Party Beneficiaries.</u> The Parties acknowledge and agree that there are no intended third-party beneficiaries under this Agreement except to the extent any third-party beneficiaries are created expressly by of this Agreement.

6.     <u>No Assignment or Transfer of Claims.</u> The Parties represent and warrant that they have not assigned or transferred, nor purported to assign or transfer, to any person or entity not a Party any claims released in this Agreement.

7.     <u>Construction and Severability.</u> The Parties agree that this Agreement should be

construed to the greatest extent possible to be valid and that, if any portion of this Agreement is found to be invalid, the remainder of this Agreement should remain valid and be enforced to the greatest extent possible.

8.    <u>Notices.</u> When any notice or document is given to any of the Parties, that notice or document shall be delivered by electronic mail as follows:

    a.    If to Holzman Horner:

- Christopher T. Horner II, chorner@holzmanhorner.com
- Michael Holzman, mholzman@holzmanhorner.com
- With a copy to Tom Cummins, tcummins@washglobal-law.com

    b.    If to the Aspen Parties:

- Giao Le, giaole@aemtronics.com
- Jenny M.F. Fujii, jmf@kutnerlaw.com

9.    <u>Governing Law.</u> This Agreement is governed by and construed in accordance with the substantive laws of the State of Colorado, without regard to its choice of law or conflict of laws principles.

10.    <u>Arbitration.</u> With regard to any dispute between or among any of the Parties arising out of the terms of this Agreement or in any way relating to the claims released in this Agreement, the Parties agree that such dispute shall be resolved by binding arbitration pursuant to the terms of the Contracts.

11.

12.    <u>Binding on Successors.</u> This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and to their respective successors and assigns.

13.    <u>Knowing and Voluntary Execution; Advice of Counsel.</u> The Parties represent that

they are signing this Agreement knowingly and voluntarily and that the terms of the Agreement have been reached by mutual agreement after negotiation, with consideration by and participation of the Parties and their respective counsel.

14. <u>Entire Understanding</u>. This Agreement, together with the exhibits, embodies the entire understanding between the Parties relating to the resolution of their disputes. Any and all prior correspondence, understandings or memoranda are merged herein and replaced hereby. No change, alteration or modification hereof may be made except in writing signed by all Parties.

15. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which should be deemed an original and both of which together constitute one and the same document. Any Party may execute this Agreement by transmitting its signature electronically. Any electronic signature constitutes an original signature for purposes of this Agreement. This Agreement is effective upon execution and delivery of one executed counterpart from each Party to each other Party.

Each undersigned, being duly authorized, and representing that he, she, or it has the power and authority to enter into this Agreement and to perform all of its terms, has caused this Agreement to be executed.

**Holzman Horner, Chartered**

By: Christopher T. Horner II

Title: Principal

**Aspen Electronics Manufacturing Inc. Employee Stock Ownership Plan ("ESOP")**

By: _GIAO LE_

Title: Plan Administrator


**Giao Le, not in his individual capacity, but solely in his capacity as trustee of the Aspen**

**Electronics Manufacturing Inc. Employee Stock Ownership Trust**

By: _GIAO LE_

Title: Trustee


**Aspen Electronics Manufacturing Inc. Employee Stock Ownership Trust**

By: _GIAO LE_

Title: Trustee


**Aspen Electronics Manufacturing Inc.**

By: _GIAO LE_

Title: President

# EXHIBIT 1



CHRISTOPHER T. HORNER II
ADMITTED IN CA, DC, NY & VA

1300 I STREET, N.W., SUITE 400E
WASHINGTON, D.C. 20005

EMAIL: CHORNER@HOLZMANHORNER.COM
DIRECT: (202) 618-3402
FACSIMILE: (202) 905-2156

September 15, 2021

**CONFIDENTIAL**
**Via E-mail: giaole@aemtronics.com**

Aspen Electronics Manufacturing, Inc.
Attention: Board of Directors
c/o: Giao Le, President
8975 Marshall Ct #100
Westminster, CO 80031

   RE: Confirmation of Engagement of Holzman Horner PLLC

To the Board of Directors:

   Thank you for offering Holzman Horner PLLC ("**we**," "**us**," "**our**" or "**ourselves**") the opportunity to provide legal services to Aspen Electronics Manufacturing, Inc. ("**you**," "**your**" or "**yourself**"). You and we are sometimes referred to as the "**Parties**" and individually as a "**Party**."

   Section 1. **Professional Terms**. This letter (this "**Engagement Letter**") and the enclosed Dispute Resolution Procedures (the "**Dispute Resolution Procedures**"), Indemnification Agreement ("**Indemnification Agreement**"), Additional Terms of Engagement (the "**Additional Terms of Engagement**") and Schedule of Standard Charges ("**Schedule of Standard Charges**"), collectively, are referred to as the "**Professional Terms**." These Professional Terms govern your and our attorney-client relationship.

   Section 2. **Client**.

    (a) <u>Client and Non-Clients</u>. Only you are our client. We do not represent your affiliates or your or their respective incorporators, creditors, security holders, shareholders, directors, officers or employees, and we ask that you inform each of them of this limitation on your and our attorney-client relationship.

    (b) <u>No Third-Party Beneficiaries</u>. You do not intend anyone to be a third party beneficiary of your and our attorney-client relationship, whether by contract, course of conduct or otherwise. Furthermore, you do not intend to benefit another as a direct purpose of any transaction or series of transactions or your and our attorney-client relationship.

   Section 3. **Client Liaison and Firm Liaison**. We have been retained by you and will represent you, acting through your duly authorized constituents, solely in their capacities as such. Giao Le, President, will be our principal contact. Christopher T. Horner II will be the attorney responsible for the Matter.

**Confidential**
Aspen Electronics Manufacturing, Inc.
September 15, 2021
Page 2 of 7



Section 4.    <u>**Scope and Nature of our Representation**</u>.

(a)    <u>Matter and Subject Matters Included</u>. The scope and nature of our representation of you are limited to serving as special counsel to you in connection with the following matters (the "**Matter**"): a proposed transaction or a series of transactions whereby Tide Rock Holdings, LLC or its direct or indirect affiliate would either (a) acquire all or substantially all of your assets, or (b) acquire all or a portion of your equity. The scope and nature of our representation are further limited to two subject matters (collectively, the "**Subject Matters**"): (i) Part 4 of Title I of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), as such Subject Matter relates exclusively to your fiduciary responsibilities in respect of the Matter, and (ii) ERISA and the Internal Revenue Code of 1986, as amended (the "**Code**"), as such Subject Matters relate exclusively to the qualification of the employee stock ownership plan as an "employee stock ownership plan" under Code Sections 401(a) and 4975(e)(7) and ERISA Section 407(d)(6)(A). The scope and nature of our representation are limited exclusively to the Matter and Subject Matters and do not extend to any other matter or subject matter, including the laws of the United States of America other than ERISA and the Code (as described in this paragraph) and state or local laws, including the laws of the State of Colorado.

(b)    <u>Matters and Subject Matters Excluded</u>. You acknowledge that you have sought us out at our District of Columbia offices for legal services with respect to federal law and that we practice law in the District of Columbia and not in the State of Colorado. Furthermore, you acknowledge that our attorneys are not admitted to the Colorado State Bar and that you are not seeking advice from us with respect to the laws of the State of Colorado, which laws could influence your decisions and could be outcome determinative to a material aspect of the Matter. We encourage you to carefully consider at the onset and during the course of our representation of you the desirability of engaging local counsel in the State of Colorado (or other relevant jurisdictions) or other subject matter counsel to represent you in connection with matters and subject matters beyond the limited scope and nature of our representation.

Section 5.    <u>**Professional Fees**</u>. Professional fees are based substantially on the time spent by each professional providing legal services, computed using such professional's hourly rate. Current hourly rates for the professionals who, at this time, have been assigned to provide legal services are: Michael R. Holzman, $850 per hour; Christopher T. Horner II, $850 per hour; and Jay X. Jin, $450 per hour. No portion of professional fees is contingent upon the outcome of the Matter or any other matter.

Section 6.    <u>**Advances and Expenses**</u>. You agree to reimburse us for all advances paid and expenses incurred by us on your behalf. Your statements will indicate all advances and expenses.

Section 7.    <u>**Security Retainers**</u>. You agree to provide us with $15,000 as a security retainer which will be deposited in our client trust account and serve as security for the payment of fees, advances, expenses and finance charges. You agree that, without further notice to you, we may, but are not required to, draw against the security retainer 10 calendar days following non-payment. You agree that, if we draw against the security retainer, then you will immediately

**Confidential**
Aspen Electronics Manufacturing, Inc.
September 15, 2021
Page 3 of 7



replenish the security retainer to $15,000. The entire portion of the security retainer that is not applied to payment will be returned to you (without interest) within 30 calendar days of payment in full of all due and unpaid professional fees, advances, expenses and finance charges and the conclusion of your and our attorney-client relationship.

Section 8.    **Statements and Payments.** We will forward an electronic mail message to you enclosing your invoice in portable document format upon the earlier of (a) the closing of the proposed transaction and (b) December 31, 2021. The statement will indicate professional fees, advances, expenses and finance charges. You agree to remit payment in full upon receipt of the statement. You agree to pay finance charges computed at the rate of 2% simple interest per calendar month on all due and unpaid professional fees, advances and expenses. Finance charges accrue from the date of the applicable statement until we receive payment in full. If you do not replenish a security retainer or pay any portion of professional fees, expenses, advances or finance charges, in either case, in accordance with applicable statements, then we are entitled to suspend and withhold existing work in progress, decline to render additional legal services or terminate the attorney-client relationship.

Section 9.    **Support Service and Testimony.**

(a)    If we are asked by you or another to provide support services or testimony in connection with any investigation or litigation, including deposition, trial, arbitration, administrative hearing or similar proceeding, regarding the Matter or our professional services, then you agree to reimburse us at each applicable employee's standard hourly rate then in effect, plus reasonable and documented expenses attributable to such support services or testimony.

(b)    If we are called upon to produce documents, attend depositions or interviews or testify at trial, arbitration, administrative hearing or similar proceeding (whether by subpoena, court process or order or otherwise) regarding the Matter or our professional services, then you agree to reimburse us at the applicable employee's standard hourly rate then in effect, plus reasonable and documented expenses (including reasonable internal and external attorneys' fees and e-discovery consultant fees) attributable to such production, attendance or testimony.

Section 10.    **Informed Consent.**

(a)    Representations of Other Current and Prospective Clients.

(i)    Specific Types of Clients and Representations. As discussed, we are a boutique law firm that represents a significant number of clients, including plan sponsors, trustees and appraisers of employee stock ownership plans, in a niche market. You are the plan sponsor of an employee stock ownership plan, and you have the responsibility to select and oversee the trustee of the employee stock ownership plan. The trustee has the responsibility to select and oversee an appraiser and to determine the fair market value of employer securities. Because of our substantial experience and significant, nationwide client base in a niche market, such trustees or appraisers might have been, then be, or later become, our clients in matters not substantially related to the Matter, including potential or actual transactions, contested matters (including litigation or

**Confidential**
Aspen Electronics Manufacturing, Inc.
September 15, 2021
Page 4 of 7



other dispute resolution proceedings) or regulatory actions. Accordingly, absent your consent, you and such other current and prospective clients may be unable to retain us as counsel and we may be precluded from representing either you or them in current or future matters. We wish to be fair to all of our clients and to assure that you and they have the right and ability to retain us as counsel if you or they so choose. In addition, we believe that you and our prospective clients will derive substantial benefits from your advance consent to our representation of such prospective clients.

(ii)     <u>Conditions</u>. Your consent is expressly conditioned upon our agreements, hereby confirmed, that (A) we will not represent another client in a matter that is both adverse to you and substantially related to the Matter; and (B) we will not disclose to another client or third party any non-public, confidential and factual information that we obtain from you in connection with our representation of you in the Matter, and we will not use it in any manner that is disadvantageous to you or advantageous to another client or third party.

(iii)     <u>Informed Consent</u>. You acknowledge that you are sophisticated and an experienced consumer of legal services generally and specifically in deciding whether to consent to a law firm's representation of you and its other current and prospective clients. You acknowledge that you are adequately informed about the existence and nature of the specific types of our current and prospective clients and the specific types of matters in which we currently represent them or may undertake in the future to represent them. You acknowledge that you have available to you independent legal counsel to review this <u>Section 10(a)</u> and to advise you as to its scope and effect before deciding whether to consent to our representation of you and such other current and prospective clients. You voluntarily consent to our representation of you and such other current and prospective clients, and you agree not to assert that our representation of other current or prospective clients or our not disclosing to you non-public, confidential and factual information obtained from them or not using it in a manner disadvantageous to them or advantageous to you, is a breach of a duty owed to you by us or our attorneys. You and we intend for our discussion and this <u>Section 10(a)</u> to establish your informed consent to our representation of you and our other former, current and prospective clients under District of Columbia Rules of Professional Conduct 1.0(e) and 1.7(c)(1) and District of Columbia Legal Ethics Opinion 309. Consequently, if you have any questions concerning our current or prospective clients or the matters in which we presently, or may in the future undertake to, represent them, or if you believe that you would benefit from additional information or explanation from us, then please contact us before signing below.

(iv)     <u>Repudiation of Consent</u>. You may repudiate your consent at any time by giving written notice to us. If you repudiate your consent, then we may, at our option, withdraw from our representation of you in the Matter or any other matter and continue any representation permitted under this <u>Section 10(a)</u>.

Reserved.

(c)     <u>Indemnification Agreement</u>. As discussed, we look forward to a productive and mutually rewarding relationship. In this regard, we have no present expectation that any action, litigation, suit, proceeding or investigation whatsoever will arise with respect to your and our

**Confidential**
Aspen Electronics Manufacturing, Inc.
September 15, 2021
Page 5 of 7



relationship, including the attorney-client relationship, these Professional Terms or the negotiation, execution or performance of these Professional Terms (including any representation made in, in connection with or as an inducement to enter into these Professional Terms) or our legal services. You agree to all of the terms contained in the enclosed Indemnification Agreement and acknowledge that such terms are a reasonable allocation of the relative costs, benefits and potential risks, in each case whether or not now known, in respect of such matters. You and we intend for this Section 10(c) and the Indemnification Agreement to establish your informed consent to your obligations under the Indemnification Agreement under District of Columbia Rules of Professional Conduct 1.0(e) and 1.8(a)(3). Consequently, if you have any questions concerning your obligations under the Indemnification Agreement, or if you believe that you would benefit from additional information or explanation from us, then please contact us before signing below.

Section 11.    **General Terms**.

(a)    Assignment and Delegation. No Party may assign any of such Party's rights under these Professional Terms, directly or indirectly, voluntarily or involuntarily, including by merger (whether or not such Party is the surviving entity), consolidation, dissolution, operation of law or any other manner, without the express, prior and written consent of each other Party. An assignment of rights does not relieve the assigning Party of such Party's obligation to perform these Professional Terms. No Party may delegate any of such Party's performance under these Professional Terms. Any purported assignment of rights or delegation of performance in violation of this Section 11(a) is void. For clarity, you agree not to assign any action, cause of action or claim (whether in contract, tort or otherwise) you may now or hereafter have against us or our current or future members, managers, officers, employees or independent contractors.

(b)    Successors and Assigns. These Professional Terms bind and benefit the Parties; the heirs, legatees, beneficiaries, executors, administrators, personal representatives and permitted assigns of each Party who is a natural person; and the permitted successors and assigns of each Party that is not a natural person.

(c)    Third Party Beneficiaries. Except as provided in Section 11(b) and this Section 11(c), these Professional Terms do not and are not intended to confer any enforceable rights or remedies upon any natural person or entity other than the Parties. Each Party agrees that each Arbitration Party and each Indemnitee are express, intended third party beneficiaries of these Professional Terms with the right to enforce all of the terms contained in these Professional Terms.

(d)    Termination and Survival. The effective date of these Professional Terms (the "**Effective Date**") is the earlier of the date you sign below or the date we begin providing legal services to you. The date of this Engagement Letter is for reference only. Either you or we may terminate the attorney-client relationship at any time, subject only to applicable law and District of Columbia Rules of Professional Conduct. These Professional Terms, including, for clarity, your obligation to pay unpaid professional fees, advances, expenses and finance charges, survive the termination of the attorney-client relationship.

**Confidential**
Aspen Electronics Manufacturing, Inc.
September 15, 2021
Page 6 of 7



(e)     Entire Agreement. These Professional Terms constitute the final agreement among the Parties and the complete and exclusive expression of the Parties' agreement on the matters contained in these Professional Terms. All prior and contemporaneous negotiations and agreements between the Parties on the matters contained in these Professional Terms are expressly merged into and superseded by these Professional Terms. In entering into these Professional Terms, no Party has relied upon any statement, representation, warranty or agreement of any other Party, or any natural person or entity on behalf of such other Party, except for those expressly contained in these Professional Terms.

(f)     Amendment or Modification. No amendment to or modification of these Professional Terms, including this Section 11(f), is effective unless it is expressly identified as an amendment to or modification of these Professional Terms, as applicable, and signed by an authorized representative of each Party.

(g)     Waiver. No waiver under these Professional Terms, including this Section 11(g), is effective unless it is identified as a waiver to these Professional Terms and signed by an authorized representative of the Party waiving its right.

(h)     Construction and Interpretation. Whenever the word "include" or "including" is used, it is deemed to be followed by the words "without limitation," and the word "or" is disjunctive but not exclusive. Each of the Dispute Resolution Procedures, Indemnification Agreement, Additional Terms of Engagement and Schedule of Standard Charges is incorporated into this Engagement Letter by this reference as though reproduced verbatim in this Engagement Letter, and each of them is to be construed with, and as an integral part of, this Engagement Letter.

(i)     Counterparts. The Parties may execute this Engagement Letter in multiple counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement.

(j)     Electronic Signatures. Counterparts delivered via electronic mail (including PDF format or any electronic signature complying with the U.S. Federal ESIGN Act of 2000, e.g., *www.docusign.com*) or other transmission method are deemed original signatures and any counterpart so delivered is deemed to have been duly and validly delivered and be valid and effective for all purposes. Each Party irrevocably waives and agrees not to assert any defense to the formation of a contract or enforceability of these Professional Terms by virtue of the use of electronic delivery or electronic signatures to authenticate these Professional Terms.

Remainder of Page Intentionally Blank

**Confidential**
Aspen Electronics Manufacturing, Inc.
September 15, 2021
Page 7 of 7



Section 12.   **Alternative Dispute Resolution**. **AS DISCUSSED, YOU AND WE AGREE TO BINDING ARBITRATION IN ACCORDANCE WITH THE ENCLOSED DISPUTE RESOLUTION PROCEDURES**.

Section 13.   **Representation**. We encourage you to consult independent legal counsel of your choice regarding the scope and effect of these Professional Terms and your decision to grant informed consent to our representation of you before signing below. You acknowledge that you have had a reasonable and meaningful opportunity to seek and to obtain such advice.

Section 14.   **Agreement**. You acknowledge that you have read these Professional Terms in their entirety and understand the scope and effect of all of the terms contained in these Professional Terms, and that you have voluntarily agreed to all such terms only after having the benefit of information necessary to make a fully informed decision.

Sincerely,

HOLZMAN HORNER PLLC

Christopher T. Horner II, Member

ACKNOWLEDGED AND AGREED WITH INFORMED CONSENT GRANTED
(Engagement Letter, Dispute Resolution Procedures, Indemnification Agreement, Additional Terms of Engagement and Schedule of Standard Charges):

ASPEN ELECTRONICS MANUFACTURING, INC.,
a Colorado corporation

Giao Le, President

Date Signed: September 15, 2021

Enclosures:      Dispute Resolution Procedures
                 Indemnification Agreement
                 Additional Terms of Engagement
                 Schedule of Standard Charges
                 Retainer Invoice
                 Form W-9 Request for Taxpayer Identification Number and Certification

**DISPUTE RESOLUTION PROCEDURES**

## DISPUTE RESOLUTION PROCEDURES

Section 1.       **Acknowledgement**. You acknowledge that: (a) you are experienced in making legal decisions with respect to choices of forum and dispute resolution alternatives and procedures, including arbitration and litigation; (b) you have read carefully and understand the scope and effect of the terms contained in these Dispute Resolution Procedures; and (c) you have agreed to all such terms and granted informed consent to our representation of you only after: (i) having been provided a reasonable and meaningful opportunity not only to seek and to obtain the advice of independent legal counsel of your choice with respect to such terms, but also to negotiate such terms; and (ii) the benefit of both (A) the information necessary to make a fully informed decision and (B) adequate information and explanation about the material risks of and reasonably available alternatives to such terms.

Section 2.       **District of Columbia Legal Ethics Opinion 376 and American Bar Association Formal Opinion 02-425 Disclosures and Acknowledgement**. You acknowledge that: (a) arbitration may involve substantial upfront costs compared to litigation (we encourage you to read the Arbitration Schedule of Fees and Costs which can be accessed by following this hyperlink: https://www.jamsadr.com/arbitration-fees); (b) each Arbitration Party is waiving rights to have any disputes, controversies or claims heard or tried in court before a judge or jury; (c) each Arbitration Party is waiving rights to an appeal that customarily would be available in a judicial proceeding but that may be limited or unavailable with binding arbitration; and (d) each Arbitration Party potentially is waiving the right to take discovery to the full extent permitted under applicable court rules and codes of civil procedure. Furthermore, you acknowledge that you have been fully apprised of the advantages and disadvantages of each of the terms contained in these Dispute Resolution Procedures and have been given sufficient information to permit you to make an informed decision about whether to agree to such terms.

Section 3.       **District of Columbia Rule of Professional Conduct 1.8(g)(1) Limitation**. Nothing in these Dispute Resolution Procedures is to be construed or interpreted in a manner to prospectively limit our liability to you for professional malpractice.

Section 4.       **Professional Conduct Grievances**. Nothing in these Dispute Resolution Procedures is to be construed or interpreted to impinge upon an Arbitration Party's right to make a disciplinary complaint before the District of Columbia Office of Disciplinary Counsel or other disciplinary authorities.

Section 5.       **Fee Disputes**.

(a)       Agreement to Arbitrate Fee Disputes. If you believe that the professional fees, expenses, advances or finance charges indicated in any statement are erroneous or unreasonable for any reason, then you agree to give us written notice within 10 calendar days after receipt of such statement, identify the specific time entries (or expenses, advances or finance charges) being disputed and provide the basis for your belief. If you fail to give us written notice within such 10 calendar day period or fail to identify such specific time entries (or expenses, advances or finance charges) or provide the basis for your belief, then you agree that all professional fees, expenses, advances and finance charges indicated in such statement (including previous balances) are conclusively deemed accurate and reasonable for all purposes, including

resolution of any dispute, controversy or claim regarding our billing practices or any portion of professional fees, expenses, advances or finance charges (collectively, "**Fee Disputes**"). If any Fee Dispute arises, then you agree immediately to pay all undisputed amounts, and you agree that any and all Fee Disputes are to be resolved, exclusively, by binding arbitration in accordance with this Section 5 and Section 6 of these Dispute Resolution Procedures. For clarity, this Section 5 does not apply to Legal Disputes other than Fee Disputes.

(b)     District of Columbia Rule of Professional Conduct 1.5 Acknowledgements.

(i)     Reasonableness. You agree that our representation of you will require significant professional time and is anticipated to present novel or difficult questions of law, requiring significant skill from our legal professionals. You agree that undertaking representation of you will preclude us from undertaking representation of other prospective clients, and that the fee arrangement contained in these Professional Terms is customary for similar legal services in the District of Columbia. You agree that our representation of you involves a significant amount, and that you and others desire that we affect our representation of you in the Matter in the most expedient manner reasonably available. Finally, you agree that the legal professionals anticipated to perform legal services on your behalf have significant experience, an excellent reputation and demonstrated ability to perform the legal services necessary to fulfill the scope and nature of our representation of you.

(ii)     Fee Arrangement. You agree that the arrangements in respect of professional fees, expenses, advances and finance charges identified in these Professional Terms are reasonable, clear and unambiguous. You agree that these Professional Terms clearly and unambiguously explain the limited scope and nature of our representation, how professional fees will be calculated, what expenses and advances there may be in addition to our professional fees and how and when you will be expected to pay our professional fees, expenses, advances and finance charges.

(c)     Time Limitation. Solely with respect to Fee Disputes, the evidentiary hearing on the merits is to commence within 90 calendar days after service of the arbitration demand, and the arbitrator shall render a final award within 10 calendar days after the close of the hearing on the merits.

(d)     Default and Default Award. The arbitrator shall enter an Arbitration Party's default and shall enter a default award in accordance with Federal Rule of Civil Procedure 55.

(e)     Burden of Persuasion. You agree that you (not we) will have the burden of persuasion to establish that the disputed portion of our professional fees, expenses, advances and finance charges is erroneous or unreasonable.

(f)     Interest. The arbitrator shall award interest on any amount awarded to us computed at a rate of 2% simple interest per calendar month from the date of the applicable statement(s), and any judgement into which an arbitration award is confirmed is to accrue interest during the post-judgment period computed at a rate of 2% simple interest per calendar month.

Section 6.     **Other Disputes, Controversies or Claims**.

(a)     Agreement to Arbitrate Other Disputes, Controversies and Claims. You, for yourself and for each other Client Arbitration Party, agree that any and all disputes, controversies or claims whatsoever (whether in contract, tort, statute or otherwise) arising out of or relating to the relationship between or among the Firm Arbitration Parties, on the one hand, and the Client Arbitration Parties, on the other hand, including the attorney-client relationship, these Professional Terms, the negotiation, execution or performance of these Professional Terms (including any representation made in, in connection with or as an inducement to enter into these Professional Terms) or our legal services (collectively "**Legal Disputes**") are to be resolved, exclusively, by binding arbitration in accordance with this Section 6 (and not Section 5 of these Dispute Resolution Procedures, except in the case of Fee Disputes).

(b)     Parties Bound by Agreement to Arbitrate. You accept the agreement to arbitrate on behalf of yourself and, to the maximum extent permitted by law, as principal, on behalf of your current and future affiliates and your and their respective current or future shareholders, members, partners, directors, managers, officers, employees and independent contractors, as agents (collectively, the "**Client Arbitration Parties**"). We accept the agreement to arbitrate on behalf of ourselves, and, to the maximum extent permitted by law, as principal, on behalf of our current and future members, managers, officers, employees and independent contractors, as agents (collectively, the "**Firm Arbitration Parties**," and together with the Client Arbitration Parties, the "**Arbitration Parties**").

(c)     Scope of Agreement to Arbitrate. The following is a non-exclusive list of matters subject to binding arbitration: Fee Disputes, negligence (whether active, passive, ordinary, sole, concurrent, contributory or otherwise), professional malpractice, breach of fiduciary duty, knowing participation in the breach of a fiduciary duty of another, fraud, fraudulent concealment, fraudulent inducement, conspiracy to commit fraud, misrepresentation (whether negligent, intentional or otherwise), detrimental reliance, bad faith, aiding and abetting unlawful conduct of another, breach of contract (whether express, implied or otherwise), promissory estoppel, breach of any implied covenant of good faith and fair dealing, disgorgement of unjust enrichment, forfeiture, *quantum meruit*, common law tort claims for contribution or indemnification, federal or state statutory claims to the extent permitted by law, claims under the Indemnification Agreement, *respondeat superior*, claims asserting status as a third-party beneficiary of your and our attorney-client relationship, disputes over the quality of our legal services, claims relating to or arising out of your or our performance under these Professional Terms, and other claims arising out of any actual alleged act or omission by any Arbitration Party.

(d)     Administration of Arbitration. The arbitration is to be administered by JAMS pursuant to its then-existing Streamlined Arbitration Rules and Procedures, which can be accessed through the following hyperlink: https://www.jamsadr.com/rules-streamlined-arbitration or can be provided to you by us upon your written request (the "**JAMS Rules**"). We encourage you to read the JAMS Rules before signing the Engagement Letter. If an express conflict exists between any JAMS Rule and any term contained in these Professional Terms, then the term contained in these Professional Terms controls.

(e)     Appointment of Arbitrator. The arbitration is to be conducted before a single, neutral arbitrator selected in accordance with the JAMS Rules. The arbitrator is to be either (A) a retired judge or justice of the Superior Court of the District of Columbia or United States

District Court for the District of Columbia with at least five years of service as a judge or justice, or, if such candidate does not exist, then (B) a retired judge or justice with substantial experience adjudicating matters under the Employee Retirement Income Security Act of 1974 ("**ERISA**"). No candidate may serve as an arbitrator unless such candidate has agreed in writing to abide by and be bound by these Professional Terms.

(f)     Venue. The arbitration is to be conducted, exclusively, in the District of Columbia.

(g)     Governing Law. You agree that these Professional Terms are made and entered into in the District of Columbia and are to be performed substantially within the District of Columbia. You acknowledge that we practice principally in the District of Columbia. You and we specifically intend that our conduct will have its predominant effect in the District of Columbia, and not in the State of Colorado or any other jurisdiction. You agree that your and our attorney-client relationship has a substantial relationship to the District of Columbia. The laws of the United States of America, if and to the extent applicable, and the laws of the District of Columbia (including its statutes of limitations), without regard to the principles or rules of conflict of laws of the District of Columbia, the State of Colorado or any other jurisdiction, govern these Professional Terms, the negotiation, execution or performance of these Professional Terms (including any representation made in, in connection with or as an inducement to enter into these Professional Terms) and any and all Legal Disputes. You and we knowingly, irrevocably and unconditionally waive and agree not to assert that application of the substantive laws of the District of Columbia (including its statutes of limitations) would violate a fundamental public policy of the State of Colorado or any other jurisdiction with a potentially more substantial interest in any particular issue than the District of Columbia.

(h)     Scope of Arbitrator's Authority.

(i)     Federal Arbitration Act. You agree that these Professional Terms evidence a transaction in interstate commerce. The Federal Arbitration Act governs these Dispute Resolution Procedures. The arbitrator shall decide any issue regarding the extent to which any Legal Dispute is subject to arbitration, or concerning the applicability, construction or interpretation, validity, legality or enforceability of these Dispute Resolution Procedures.

(ii)     Power of the Arbitrator. The arbitrator shall decide any and all Legal Disputes in accordance with the substantive laws of the District of Columbia (including its statutes of limitations). The arbitrator shall have the power to make any award or impose any remedy that could be made or imposed by the Superior Court of the District of Columbia applying the substantive laws of the District of Columbia. The arbitrator is expressly prohibited from allocating arbitration fees and arbitrator compensation and expenses, except, and solely to the extent, permitted by JAMS Rule 26(c) and Section 6(k) of these Dispute Resolution Procedures or the Indemnification Agreement or as required by statute or other applicable law.

(i)     Consent to Non-Exclusive Jurisdiction and Venue. You, for yourself, for your properties and for each other Client Arbitration Party, (A) irrevocably consent, generally and unconditionally, to the non-exclusive jurisdiction and venue of the Superior Court of the District of Columbia (the "**Permitted Court**") for all purposes in connection with arbitration, including to

compel arbitration, to grant provisional remedies in aid of arbitration and to confirm, vacate or enforce any arbitration award (collectively, "**Permitted Court Actions**"); and (B) irrevocably and unconditionally waive, to the maximum extent permitted by law, any objection which you or they may now or hereafter have to the laying of venue of any Permitted Court Action in the Permitted Court or that any Permitted Court Action which has been brought in a Permitted Court has been brought in an inconvenient forum.

(j)    <u>Consent to Service of Process</u>. You, for yourself, and for each other Client Arbitration Party, irrevocably consent to the service of process outside of the territorial jurisdiction of the Permitted Court in any such Permitted Court Action by mailing copies of such process by certified or registered mail (in each case, return receipt requested, postage pre-paid) to the address to which the Engagement Letter is addressed. Service of process in such manner is deemed complete on the tenth (10th) calendar day after such mailing. This <u>Section 6(j)</u> does not affect an Arbitration Party's ability to serve process in any other manner permitted by applicable law.

(k)    <u>Retainers, Case Management Fees and Other Fees of JAMS and the Arbitrator</u>. If an Arbitration Party fails to deposit or pay such Arbitration Party's pro rata share of any retainer, case management fee or other fee of JAMS or the arbitrator as set forth in the JAMS fee schedule then in effect, then, within 10 calendar days after the expiration of the time to make such deposits or payments, the arbitrator shall issue an interim decision and award permanently precluding such failing Arbitration Party from offering evidence of any affirmative claim and awarding against such failing Arbitration Party all deposits or payments voluntarily advanced by any non-failing Arbitration Party. The arbitrator shall provide in such interim decision and award for the recovery of interest computed at a rate of 2% simple interest per calendar month from the date of the award and all reasonable internal and external attorneys' fees and costs incurred by an Arbitration Party to confirm the award and enforce and collect any judgment into which the award is confirmed.

(l)    <u>Time Limitations</u>. No demand for arbitration may be made after the date when the institution of legal or equitable proceedings would be barred by the applicable statute of limitation.

Section 7.    **Confidentiality**. All arbitrations are to be kept strictly confidential. The existence of any arbitration and any and all elements of it (including this <u>Section 7</u>) are not to be disclosed to anyone other than the arbitrator, the Arbitration Parties actually party to the arbitration and their respective counsel, and anyone reasonably necessary to the conduct of the arbitration; <u>provided</u>, <u>however</u>, that disclosure may be made as required by law or to the extent legally necessary to enforce the rights arising out of the arbitration.

Section 8.    **Severability**. If a tribunal of competent jurisdiction determines that any term contained in these Dispute Resolution Procedures, including this paragraph, is invalid, illegal or unenforceable, then such term is excluded solely to the extent of such invalidity, illegality or unenforceability, all other terms remain in full force and effect, and the invalid, illegal or unenforceable term is deemed replaced by a term that is valid, legal and enforceable and results in an arbitrator (as opposed to a court) determining any and all disputes, controversies or claims, to the maximum extent permitted by applicable law and the District of Columbia Rules of Professional Conduct.

Remainder of Page Intentionally Blank

Dispute Resolution Procedures

**INDEMNIFICATION AGREEMENT**

## INDEMNIFICATION AGREEMENT

Section 1.        **District of Columbia Rule of Professional Conduct 1.8(a) Acknowledgements**. You acknowledge that (a) you are experienced in making legal and financial decisions with respect to risk management and allocation, including advancement of expenses and indemnification of losses and procedures relating thereto; (b) you have read carefully and understand the scope and effect of the terms contained in this Indemnification Agreement; and (c) you have agreed to all such terms and granted informed consent to our representation of you only after: (i) having been provided a reasonable and meaningful opportunity not only to seek and to obtain the advice of independent legal counsel of your choice with respect to such terms, but also to negotiate such terms; (ii) the benefit of both (A) the information necessary to make a fully informed decision and (B) adequate information and explanation about the material risks of and reasonably available alternatives to such terms; and (iii) having determined that such terms, individually and collectively, are fair and reasonable.

Section 2.        **District of Columbia Rule of Professional Conduct 8.4(d) Disclosure and Acknowledgements**. You acknowledge that your express indemnification obligation is unilateral (i.e. we are not agreeing to express indemnification of you) and applies to any action, litigation, suit, proceeding or investigation between or among you, on the one hand, and any Indemnitee, on the other hand (i.e. first party disputes). You agree that none of the terms contained in this Indemnification Agreement, individually or collectively, seriously interfere with the administration of justice. We encourage you to consult independent legal counsel of your choice regarding the scope and effect of each term contained in this Indemnification Agreement before signing the Engagement Letter.

Section 3.        **District of Columbia Rule of Professional Conduct 1.8(g)(1) Limitation**. Nothing in this Indemnification Agreement is to be construed or interpreted in a manner to prospectively limit our liability to you for professional malpractice.

Section 4.        **Indemnification**. Subject to the terms of this Indemnification Agreement, you agree to indemnify, to the maximum extent permitted by law and the District of Columbia Rules of Professional Conduct, us and our current and future members, managers, officers, employees and independent contractors (collectively, the "**Indemnitees**") against any and all loss, liability, damage, cost or expense whatsoever (including, for clarity, amounts payable in settlement, reasonable internal and external attorneys' fees and expenses and amounts identified in Section 7 of this Indemnification Agreement) (collectively "**Losses**") if any of them becomes a party to or participant in, or is threated with being made a party to or participant in, any action, litigation, suit, proceeding (including, for clarity, arbitration) or investigation whatsoever arising out of or relating to, in whole or in part, your and our relationship, including the attorney-client relationship, these Professional Terms or the negotiation, execution or performance of these Professional Terms (including any representation made in, in connection with or as an inducement to enter into these Professional Terms) or our legal services (collectively, "**Proceedings**"), including Proceedings brought by you, on your behalf or derivative of your rights, brought by any Indemnitee (whether under Section 6 of this Indemnification Agreement or otherwise) or brought by third parties, and Proceedings in which an Indemnitee is solely a witness.

Section 5.        **Advance Payment of Expenses**. Each Indemnitee is entitled to advancement by you of any and all reasonable costs and expenses (including, for clarity, reasonable internal and external attorneys' fees and expenses and expert witnesses' fees and expenses) incurred by the Indemnitee in connection with such Proceeding (collectively, "**Expenses**") prior to final disposition of such Proceeding. Without limiting the generality of the preceding sentence, within 20 business days after your receipt of the written undertaking identified in Section 11 of this Indemnification Agreement, you agree (a) to pay such Expenses on behalf of such Indemnitee, (b) to advance to any Indemnitee funds in an amount sufficient to pay such Expenses or (c) to reimburse Indemnitee for such Expenses, in each case, at the election of the Indemnitee.

Section 6.        **Expenses to Enforce Rights**. You agree to indemnify, to the maximum extent permitted by law and the District of Columbia Rules of Professional Conduct, each Indemnitee against (and, if requested by such Indemnitee, to advance to such Indemnitee, subject to Section 11 of this Indemnification Agreement) Expenses (including, for clarity, amounts identified in Section 7 of this Indemnification Agreement) reasonably paid or incurred by such Indemnitee in connection with any Proceeding brought by such Indemnitee (a) for indemnification or reimbursement or advance payment of Expenses; (b) to interpret or construe (including, for clarity, to seek and obtain declaratory relief), to defend the legality, validity or enforceability of or to enforce any term contained in these Professional Terms; or (c) to recover or determine the amount or reasonableness of any of our professional fees, expenses, advances or finance charges or Expenses (i.e. fees on fees), in each case, whether in negotiation, mediation, arbitration, litigation, appeal, settlement or compromise or otherwise.

Section 7.        **Professional Time**. You agree that indemnifiable Loss includes an amount equal to any and all time expended by our attorneys or staff members, multiplied by their respective hourly rates identified in the Engagement Letter, whether in investigation, opposition, prosecution, defense, appeal, settlement or compromise (or in assisting with or in preparation for any of them) or otherwise, whether in negotiation, mediation, arbitration, litigation, appeal, settlement or compromise or otherwise, whether expended voluntarily, at the request of you, us or another, and whether we or any other Indemnitee is unrepresented or is represented *pro se*, by outside counsel or both.

Section 8.        **Exclusions from Indemnification**. Notwithstanding anything in this Indemnification Agreement to the contrary, you are not obligated to indemnify any Indemnitee if, and only if, and solely to the extent of the specific portion of Loss that, a tribunal of competent jurisdiction determines in a judgment, award, order or decree that is final insofar as it is no longer subject to review or appeal (a) to have resulted, exclusively, from the professional malpractice, gross negligence or willful misconduct of any Indemnitee, or (b) for which indemnification is prohibited by law or the District of Columbia Rules of Professional Conduct.

Section 9.        **Partial Indemnification**. If an Indemnitee is entitled to indemnification for a portion, but not for the entire amount, of any Losses then you agree to indemnify the Indemnitee for the portion to which the Indemnitee is entitled.

Section 10.        **Third Party Proceeding Procedures**. An Indemnitee shall give written notice to you after receiving written notice of any Proceeding brought by a third party (each a

"**Third Party Proceeding**") for which the Indemnitee intends to seek indemnification. The Indemnitee is entitled to undertake, conduct and control, thorough one lead defense counsel, one ethics counsel and one local counsel, in each case selected by the Indemnitee in the Indemnitee's sole discretion, the investigation, negotiation, opposition, prosecution, defense, appeal or settlement or compromise of the entire Third Party Proceeding, and you agree to pay, advance or reimburse, as applicable, Expenses incurred by such Indemnitee in accordance with <u>Section 5</u> of this Indemnification Agreement. Each Indemnitee shall give written notice to you of any written proposed settlement or compromise. You shall not, without such Indemnitee's express, prior and written consent, settle or compromise any Third Party Proceeding or consent to the entry of any judgment regarding which indemnification is being sought. You agree to cooperate with and assist the Indemnitee (and the Indemnitee's insurers and counsel) in connection with the investigation, negotiation, opposition, prosecution, defense, settlement or appeal of the Third Party Proceeding.

Section 11.    **Undertaking to Reimburse Expenses**. Any Indemnitee requesting payment, advancement or reimbursement shall deliver to you one written undertaking to reimburse Expense actually paid, advanced or reimbursed by you but only if and solely to the extent that a tribunal of competent jurisdiction determines in a judgment that is final insofar as it is no longer subject to review or appeal that indemnification is prohibited by law or the District of Columbia Rules of Professional Conduct. You agree to accept such undertaking without reference to the Indemnitee's ability to reimburse such Expenses, the merits of the Third Party Proceeding, or the prospect of the Indemnitee's entitlement to indemnification. You agree that the Indemnitee's obligation to reimburse Expenses is to be unsecured and without interest or the posting of collateral.

Section 12.    **Potential Claimants in Third Party Proceedings**. The following is a non-exclusive list of potential claimants that may bring Third Party Proceedings: (a) the United States Department of Labor (including subpoenas, fact-finding investigations, enforcement actions and appeals); (b) any addressee, including your lenders, of any written opinion letter delivered by us, including, for clarity, any permitted assignee of such addressee and anyone granted reliance on such written opinion letter by us; (c) your other advisors, including accountants, co-counsel or successor counsel; (d) your affiliates or your or their respective incorporators, creditors, security holders, shareholders, directors, officers or employees; (e) anyone who is not you and who claims an attorney-client relationship with us or who claims to be a third party beneficiary of your and our attorney-client relationship, whether by contract, course of conduct or otherwise; and (f) anyone who claims to be owed a legal duty by us or our attorneys.

Section 13.    **Presumption and Burden of Persuasion**. Any tribunal of competent jurisdiction determining whether an Indemnitee is legally entitled to indemnification or whether an Indemnitee is legally entitled to payment, advancement or reimbursement, shall presume that the Indemnitee has satisfied all conditions precedent, if any, to entitlement and is so entitled, and you shall have the burden of persuasion to overcome that presumption and establish that the Indemnitee is not so entitled.

Section 14.    **Non-Exclusivity**. The rights of each Indemnitee under this Indemnification Agreement are non-exclusive and in addition to any other rights any Indemnitee may now or hereafter have under insurance or otherwise.

Section 15.   **Fundamental Corporate Events**. You agree to give us written notice at least 30 calendar days immediately prior to entering into any agreement or arrangement with respect to, or affecting, any (a) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant proportion of your assets, or (b) significant recapitalization or reclassification of your outstanding securities, in either case, that does not expressly provide for the assumption of your indemnification, payment, advancement and reimbursement obligations. At our request, you agree to arrange alternative means of providing for such obligations, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms reasonably satisfactory to us.

Section 16.   **No Strict Construction**. The terms contained in this Indemnification Agreement are to be construed and interpreted liberally, subject to their plain meaning, to maximize the rights and remedies available to each Indemnitee. If an ambiguity or question of intent, construction or interpretation arises, then the terms contained in this Indemnification Agreement are to be construed and interpreted as if drafted jointly by you and each Indemnitee, and, subject to <u>Section 13</u> of this Indemnification Agreement, no presumption is to be utilized favoring or disfavoring you or any Indemnitee by virtue of any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing an instrument to be drafted or your and our attorney-client relationship, and you and we irrevocably waive and agree not to assert any right to claim or assert otherwise.

Section 17.   **Severability**. If a tribunal of competent jurisdiction determines that any term contained in this Indemnification Agreement, including this paragraph, is invalid, illegal or unenforceable, then such term is excluded solely to the extent of such invalidity, illegality or unenforceability, all other terms remain in full force and effect and the invalid, illegal or unenforceable term is deemed replaced by a term that is valid, legal and enforceable and results in indemnification of Losses, and payment, advancement and reimbursement of Expenses, in each case, to the maximum extent permitted by law and District of Columbia Rules of Professional Conduct.

Remainder of Page Intentionally Blank

**ADDITIONAL TERMS OF ENGAGEMENT**

## ADDITIONAL TERMS OF ENGAGEMENT

Section 1.    **The Firm**.

(a)    Professional Limited Liability Company. We are a professional limited liability company organized under the laws of the District of Columbia with a principal executive office in the District of Columbia.

(b)    Professional Liability Insurance. We maintain professional liability insurance coverage applicable to the legal services to be rendered.

Section 2.    **The Attorney-Client Relationship**.

(a)    Obligations.

(i)    Our Obligations. We agree to provide the legal services described in the Engagement Letter and to represent your interests consistent with legal and ethical requirements. We will endeavor to keep you informed of the progress of the Matter and respond to your inquiries.

(ii)    Your Obligations. You agree promptly to provide us with any and all information relevant to the Matter and related matters, and you agree that all such information provided by you and your agents and representatives to us will not contain any untrue statement of fact or omit to state a fact necessary in order to make the statements contained in such information not misleading. You agree to cooperate with us during the course of our representation of you and timely to respond to our requests for information and direction from you. You agree promptly to advise us of developments affecting you, the Matter or related matters. You agree to pay professional fees, advances, expenses and finance charges indicated on your statements on a timely basis. You are responsible for advising us whether any document we have prepared or received and sent to you for your approval reflects the principal terms of your proposed agreement, general strategy or other expectations, as the case may be. Finally, you acknowledge that our ability to provide legal services consistent with legal and ethical requirements and to fulfill the scope and nature of our representation of you is expressly conditioned upon your performance of your obligations.

(b)    Other Counsel and Professionals. We will strive to work efficiently and effectively with all other counsel and other professionals that you choose to retain from time to time. We expressly disclaim any responsibility or liability for the selection, appointment, supervision or performance of other counsel or other professionals.

Section 3.    **Scope and Nature of Our Representation**.

(a)    Legal Services. We provide only legal services; we do not provide non-legal services, including financial or tax accounting or reporting, investment advising or management, fiduciary services in respect of employee benefit plans, appraisals or valuation-related services, investment banking or broker-dealer services, personal or business finance, insurance brokerage or consulting, employee benefit plan administration or other non-legal service. We expressly

disclaim any duty or responsibility for the selection, supervision or performance of such others, whether or not affiliated with Ambrose Advisors, LLC, which provide such non-legal services to you. You acknowledge that we do promote, sell or solicit for sale securities, real estate or other investments. You further acknowledge that we do not recommend, represent or opine concerning specific investment advice, and we expressly disclaim any duty or responsibly based upon or arising out of the recommendations, representations or opinions of others.

(b)  <u>Disclaimer of Fiduciary Status</u>. You agree that you specifically intend that none of us or our current or future members, managers, officers, employees or independent contractors will be a "fiduciary," as defined in ERISA Section 3(21), or a "co-fiduciary," as defined in ERISA Section 405, with respect to your employee stock ownership plan.

(c)  <u>No Guarantee</u>. During the course of our representation of you, our professionals may express opinions or beliefs to you about the effectiveness of various courses of action or about the results that might be anticipated. Such statements are expressions of opinion only and should not be construed or interpreted as promises or guarantees.

(d)  <u>Matters and Subject Matters</u>. You agree that these Professional Terms apply to any and all matters and subject matters to which the scope and nature of our representation or our legal services are alleged or claimed to extend.

Section 4.  **<u>Billing Policies</u>**.

(a)  <u>Computation of Professional Fees</u>. Professional fees are computed by multiplying the time expended by our attorneys and staff members by their respective hourly rates.

(b)  <u>Statement Presentation</u>. Professional time will be recorded and billed in increments of one-tenth of one hour. Professional time will be cumulated into one, daily entry for each attorney or staff member. Professional time spent performing services includes meetings with you and others; traveling; considering, drafting, reviewing and revising documents, pleadings and other papers; legal and factual research; reviewing and analyzing information; consulting with you and others, including other attorneys and staff members within the firm and those outside of the firm; written and electronic correspondence; and making and receiving telephone calls to and from you and others, including other attorneys and staff members within the firm.

(c)  <u>Basis for Hourly Rates</u>. You agree that our hourly rates are reasonable. Hourly rates are based, in part, upon (i) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform legal service properly; (ii) the likelihood that the acceptance of the proposed representation will preclude other representations; (iii) the fee customarily charged in the District of Columbia for similar legal services; (iv) the amount involved and results obtained; (v) the limitations imposed by the client or the circumstances; (vi) the nature and length of the professional relationship with the client; (vii) the experience, reputation and ability of the attorney or staff member performing services; and (viii) whether the aggregate fee is fixed or contingent.

(d)  <u>Adjustments to Hourly Rates</u>. Hourly rates are periodically reviewed and adjusted. New rates will be applied to you upon adoption and reflected in your next statement.

Section 5.     **Communications and Information Management**.

(a)     Electronic Data, Communication and Storage. To facilitate our provision of legal services to you, we may communicate with you or others by electronic mail, send data over the internet, store electronic data hosted remotely on the internet or allow access to data through third party vendors' secured portals or clouds. Your confidential information may be transmitted or stored using these methods. We make reasonable efforts to keep such communications and data access secure in accordance with our obligations under applicable law and the District of Columbia Rules of Professional Conduct. You acknowledge that we have no control over the unauthorized interception or breach of any communication or data once it has been sent or has been subject to authorized access, notwithstanding reasonable security measures utilized by us or our third party vendors. You consent to our use of these electronic devices and application and submission of your confidential information to third party service providers during the course of our representation of you.

(b)     Confidentiality of Communications.

(i)     Confidential and Attorney-Client Privileged Communications. Communications between or among you, on the one hand, and us and our professionals, on the other hand, are confidential and may also be subject to the attorney-client privilege, which means that no one else would be entitled to know the contents of such communications. If privileged communications are shared with any third party, the attorney-client privilege may be lost and the communications may be required to be disclosed to an opposing party or others. In order to protect the confidential nature of our communications with you, we ask that you refrain from sharing or relating our communications with you to a third party. If you are uncertain as to whether you should make a disclosure to a third party, we ask that you consult with us so that we can determine whether any information should be disclosed and, if so, whether such information should be provided by you or us.

(ii)     Exception to the Attorney-Client Privilege Protections. It is important to us that you are cognizant of the potential that, if a court determines that your and our otherwise privileged communications concerning plan administration are subject to the "fiduciary exception" to the attorney-client privilege, then such communications may be required to be disclosed to plan participants or beneficiaries.

(iii)     Communication Security. We advise you to refrain from communicating with us on any unsecure device or any computer, smart phone, tablet computer, or other device shared with someone else. In addition, when communicating with us, please do not use a shared electronic mail account. You should utilize only a private electronic mail account that is password protected and accessed solely by you when you communicate with us. We further advise that any communication or posting that you make on a social media site, such as Facebook, LinkedIn or Twitter, for example, may be subject to discovery, even in a private or restricted access security setting. Similarly, any electronic mail, short message service (i.e. text), or other type of communication that you send to a third party may be subject to discovery as well. In order to protect the confidential nature of our communications with you, please be thoughtful about what you decide to post or write and refrain from making any communications to others about the communications between you and us.

(c)     Document Retention Policy. We will return your original documents and property to you upon the later of (i) the termination of your and our attorney-client relationship (unless such original documents and property are relevant to another matter with respect to which we continue to represent you) and (ii) upon payment in full for all due and unpaid professional fees, advances, expenses and finance charges, subject only to District of Columbia Rules of Professional Conduct. At such later time, you will have the opportunity to request to receive the remainder of your client file, including attorney work product. We maintain files only in electronic format. If you request to receive your remaining file from us, then we will provide your file to you via hyperlink within 30 calendar days of such request. If you decide not to request your remaining file at such later time, then you authorize us to destroy your remaining file in accordance with District of Columbia Rules of Professional Conduct and District of Columbia Legal Ethics Opinion 283. We reserve the right to make copies of your file, at our expense, for our own information and retention purposes. If all or any portion of your file becomes the subject of a subpoena, discovery request or other disclosure obligation while in our possession, including after termination of the attorney-client relationship, then you agree to pay an amount equal to the time expended by our attorneys or staff members, multiplied by their respective hourly rates identified in the Engagement Letter, and all costs incurred to perform our obligations in respect of such subpoena, discovery request or other disclosure obligation.

(d)     Our Counsel. We have both internal and external counsel who advise our professionals about their ethical, professional and legal duties. From time to time, our professionals may consult such counsel about the Matter and other matters. You acknowledge that such communications are protected from disclosure to you by the attorney-client privilege between our counsel and us. You acknowledge that any such communications are not part of your client file, and that you waive any right to obtain discovery of such communications.

Section 6.     **Insurance Matters**.

(a)     Limited Scope and Nature of our Representation. It is important to us that you clearly understand the limited scope and nature of our representation as it pertains to insurance matters at the outset and during the course of our representation of you. Although we will be pleased to assist you in assessing the potential for fiduciary liability coverage under any policy of insurance you may have, the limited scope and nature of our representation of you does not include advising you with respect to the existence or availability of fiduciary liability coverage for the Matter unless you provide us with complete copies of your current insurance policies (including underlying insurance applications, warranty letters, declarations pages and all endorsements) and expressly request our counsel on the potential coverage available under such policies. We will counsel you only with respect to fiduciary liability coverage (no other coverage of any kind) only on your behalf (not on behalf of any other insured or potential insured), and only as such fiduciary liability coverage relates to an employee stock ownership plan (not any other employee benefit plan, non-qualified deferred compensation plan or other plan).

(b)     Representation. We encourage you to consult with insurance policyholder coverage counsel of your choice and an insurance agent competent with respect to insurance matters affecting you and of your choice before signing the Engagement Letter, during the course of our representation of you and before binding any type of insurance coverage.

(c)      <u>Your and Your Agent's Responsibilities</u>. You or your insurance agent (not we) is responsible for ensuring that the statements in any application for insurance, including fiduciary liability insurance, and any attachments, materials or information submitted with any such application, including warranty letters, are true and complete in all respects (even if we undertake to assist you or your insurance agent in preparing such application for insurance). You or your insurance agent (not we) is responsible for conveying bind orders to insurers and ensuring that all subjectivities to binding coverage have been satisfied. You or your insurance agent (not we) is responsible for providing notice of claims, potential claims, the election of extended reporting periods, the occurrence of a change of control, and all other matters for which notice is required in accordance with the terms and conditions of applicable policies of insurance maintained by you. We do not make any representation of any kind to you about whether you will be able to obtain fiduciary liability coverage or whether any fiduciary liability coverage term will respond to a particular claim, loss or expense.

(d)      <u>District of Columbia Rule of Professional Conduct 1.6 Acknowledgement</u>. You authorize us to disclose otherwise confidential factual information about you to a third party insurance agent for the sole purpose of obtaining quotations in respect of fiduciary liability coverage.

(e)      <u>Questions</u>. If you have any questions regarding the limited scope and nature of our representation as it pertains to insurance matters, then please contact your Firm liaison in the first instance so that he may address your questions promptly.

Remainder of Page Intentionally Blank

**SCHEDULE OF STANDARD CHARGES**

## SCHEDULE OF STANDARD CHARGES

| Description | Charge | Basis | Statement Presentation |
|---|---|---|---|
| Technology Fee | $300 | One-time charge | Technology Fee |
| Printing Charges | $1.00 | Per page | Photocopy Charge |
| Transcription | $1.00 | Per minute | Transcription Fees |
| Photocopying Charges | $0.20 | Per page | Photocopy Charge |
| Mileage | $0.58 | Per mile | Mileage To/From |
| Postage | Cost | Cost | Postage |
| Travel Expenses (Meals, Transportation and Lodging) | Cost | Cost | Travel Expense |
| Facsimile Charges | $2.00 | Each transmitted page | Facsimile Cost |
| Computer Assisted Legal Research | Cost | Cost | Online Legal Research |
| Filing Fees | Cost | Cost | Filing Fee |
| Outside Professional Fees | Cost | Cost | Outside Professional Fee |

**RETAINER INVOICE**

**IMPORTANT NOTICE**

**PRIOR TO SENDING ANY WIRE OR ELECTRONIC TRANSFER OF FUNDS TO US, YOU MUST CONTACT YOUR FIRM LIAISON AT (202) 618-3402 TO VERIFY THE WIRE OR ELECTRONIC TRANSFER INSTRUCTIONS.**

**WE WILL NOT CHANGE WIRE OR ELECTRONIC TRANSFER INSTRUCTIONS.**

**IF YOU RECEIVE WIRE OR ELECTRONIC TRANSFER INSTRUCTIONS FOR A DIFFERENT BANK, BRANCH LOCATION, ACCOUNT NAME, ACCOUNT NUMBER OR OTHER CHANGE, THE CHANGE IN WIRE OR ELECTRONIC TRANSFER INSTRUCTIONS SHOULD BE PRESUMED TO BE FRAUDULENT. DO NOT SEND ANY FUNDS AND CONTACT YOUR FIRM LIAISON IMMEDIATELY.**

**FAILURE TO FOLLOW THIS PROCEDURE ENDANGERS YOUR FUNDS.**



A PROFESSIONAL LIMITED LIABILITY COMPANY

ACCOUNTS RECEIVABLE DEPARTMENT
1300 I STREET, N.W., SUITE 400E
WASHINGTON, D.C. 20005

E-MAIL: info@holzmanhorner.com
DIRECT: (202) 618-3402
FACSIMILE: (202) 905-2156

September 15, 2021

**CONFIDENTIAL**
**Via E-mail: giaole@aemtronics.com**

Aspen Electronics Manufacturing, Inc.
Attention: Board of Directors
c/o: Giao Le, President
8975 Marshall Ct #100
Westminster, CO 80031

Aspen Electronics
Manufacturing, Inc.
Special Counsel

*Retainer:*

| | |
|---|---:|
| Future Professional Fees: | $15,000.00 |
| Current Advances and Expenses: | $0.00 |
| **Total This Invoice:** | **$15,000.00** |

.

**Remittance Paid by Wire Transfer**

Bank of America
222 Broadway
New York, NY 10038
Account: Holzman Horner PLLC
Account # 435036490110
ABA Transit # 026009593

**Remittance Paid by ACH Electronic Transfer
or Electronic Funds Transfer**

Bank of America
222 Broadway
New York, NY 10038
Account: Holzman Horner PLLC
Account # 435036490110
ABA Transit # 051000017



ACCOUNTS RECEIVABLE DEPARTMENT
1300 I STREET, N.W., SUITE 400E
WASHINGTON, D.C. 20005

E-MAIL: info@holzmanhorner.com
DIRECT: (202) 618-3402
FACSIMILE: (202) 905-2156

## REMITTANCE ADVICE

**CONFIDENTIAL & ATTORNEY-CLIENT PRIVLEDGED COMMUNICATION**

September 15, 2021

Holzman Horner PLLC
Attention: Accounts Receivable
1300 I Street N.W., Suite 400E
Washington, D.C. 20005

Aspen Electronics
Manufacturing, Inc.
Special Counsel

*Retainer:*

| | |
|---|---|
| Future Professional Fees: | $15,000.00 |
| Current Advances and Expenses: | $0.00 |
| | **$15,000.00** |
| **Total This Invoice:** | |

**INVOICE IS DUE AND PAYABLE UPON RECEIPT**

**PLEASE RETURN THIS PAGE WITH YOUR REMITTANCE**

**FORM W-9 REQUEST FOR TAXPAYER IDENTIFICATION NUMBER AND CERTIFICATION**

# EXHIBIT 2



HOLZMAN|HORNER
A PROFESSIONAL LIMITED LIABILITY COMPANY

CHRISTOPHER T. HORNER II
ADMITTED IN CA, DC, NY & VA

1300 I STREET, N.W., SUITE 400E
WASHINGTON, D.C. 20005

EMAIL: CHORNER@HOLZMANHORNER.COM
DIRECT: (202) 618-3402
FACSIMILE: (202) 905-2156

September 15, 2021

**CONFIDENTIAL**
**Via E-mail: ajv55@msn.com**

A. Joseph Valdez, Trustee
855 W. Mulberry Street
Louisville, CO 80027

   RE: Confirmation of Engagement of Holzman Horner PLLC

To the Trustee:

   Thank you for offering Holzman Horner PLLC ("**we**," "**us**," "**our**" or "**ourselves**") the opportunity to provide legal services to A. Joseph Valdez, solely in his capacity as trustee ("**you**," "**your**" or "**yourself**") of the employee stock ownership plan and trust (collectively, the "**ESOP**") sponsored by Aspen Electronics Manufacturing, Inc. (the "**Company**"). You, the Company and we are sometimes referred to as the "**Parties**" and individually as a "**Party**."

   Section 1. **Professional Terms**. This letter (this "**Engagement Letter**") and the enclosed Acknowledgement (the "**Acknowledgement**"), Dispute Resolution Procedures (the "**Dispute Resolution Procedures**"), Additional Terms of Engagement (the "**Additional Terms of Engagement**") and Schedule of Standard Charges ("**Schedule of Standard Charges**"), collectively, are referred to as the "**Professional Terms**." These Professional Terms govern your and our attorney-client relationship.

   Section 2. **Client**.

     (a) <u>Client and Non-Clients</u>. Only you are our client. We do not represent your spouse or other family members; any entities in which you own an interest, even a substantial interest; any employee benefit plan or trust (including the ESOP), participant or beneficiary or natural person to whom you owe a duty; or any predecessor or successor trustee. We ask that, to the extent reasonable, you inform each of them of this limitation on your and our attorney-client relationship.

     (b) <u>No Third-Party Beneficiaries</u>. You do not intend anyone to be a third party beneficiary of your and our attorney-client relationship, whether by contract, course of conduct or otherwise. Furthermore, you do not intend to benefit another as a direct purpose of any transaction or series of transactions or your and our attorney-client relationship.

   Section 3. **Client Liaison and Firm Liaison**. You will be our principal contact. Christopher T. Horner II will be the attorney responsible for the Matter.

**Confidential**
A. Joseph Valdez, Trustee
September 15, 2021
Page 2 of 7



Section 4.        **Scope and Nature of our Representation**.

(a)        **Matter and Subject Matters Included**. The scope and nature of our representation of you are limited to serving as special counsel to you in connection with the following matter (the "**Matter**"): a proposed transaction or a series of transactions whereby Tide Rock Holdings, LLC or its direct or indirect affiliate would either (a) acquire all or substantially all of the Company's assets, or (b) acquire all or a portion of the Company's equity.. The scope and nature of our representation are further limited to one subject matter (the "**Subject Matter**"): Part 4 of Title I of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), as such Subject Matter relates exclusively to your fiduciary responsibilities in respect of the Matter. The scope and nature of our representation are limited exclusively to the Matter and Subject Matter and do not extend to any other matter or subject matter, including the laws of the United States of America other than ERISA (as described in this paragraph) and state or local laws, including the laws of the State of Colorado or the State of Colorado.

(b)        **Matters and Subject Matters Excluded**. You acknowledge that you have sought us out at our District of Columbia offices for legal services with respect to federal law and that we practice law in the District of Columbia and not in the State of Colorado or the State of Colorado. Furthermore, you acknowledge that our attorneys are not admitted to the Colorado State Bar and that you are not seeking advice from us with respect to the laws of the State of Colorado or the State of Colorado, which laws could influence your decisions and could be outcome determinative to a material aspect of the Matter. We encourage you to carefully consider at the onset and during the course of our representation of you the desirability of engaging local counsel in the State of Colorado, the State of Colorado (or other relevant jurisdictions) or other subject matter counsel to represent you in connection with matters and subject matters beyond the limited scope and nature of our representation.

Section 5.        **Professional Fees**. Professional fees are based substantially on the time spent by each professional providing legal services, computed using such professional's hourly rate. Current hourly rates for the professionals who, at this time, have been assigned to provide legal services are: Michael R. Holzman, $850 per hour; Christopher T. Horner II, $850 per hour; and Jay X. Jin, $450 per hour. No portion of professional fees is contingent upon the outcome of the Matter or any other matter.

Section 6.        **Advances and Expenses**. The Payors agree to reimburse us for all advances paid and expenses incurred by us on your behalf. Your statements will indicate all advances and expenses.

Section 7.        **Security Retainers**. The Payors agree to provide us with $15,000 as a security retainer which will be deposited in our client trust account and serve as security for the payment of fees, advances, expenses and finance charges. The Payors agree that, without further notice to them, we may, but are not required to, draw against the security retainer 10 calendar days following non-payment. The Payors agree that, if we draw against the security retainer, then they will immediately replenish the security retainer to $15,000. The entire portion of the security retainer that is not applied to payment will be returned to the applicable Payor (without interest)

**Confidential**
A. Joseph Valdez, Trustee
September 15, 2021
Page 3 of 7



within 30 calendar days of payment in full of all due and unpaid professional fees, advances, expenses and finance charges and the conclusion of your and our attorney-client relationship.

Section 8.        **Statements and Payments**. We will forward an electronic mail message to you enclosing your invoice in portable document format upon the closing of the proposed transaction. The statement will indicate professional fees, advances, expenses and finance charges. The Payors agree to remit payment in full upon receipt of the statement. The Payors agree to pay finance charges computed at the rate of 2% simple interest per calendar month on all due and unpaid professional fees, advances and expenses. Finance charges accrue from the date of the applicable statement until we receive payment in full. If a Payor does not replenish a security retainer or pay any portion of professional fees, expenses, advances or finance charges, in either case, in accordance with applicable statements, then we are entitled to suspend and withhold existing work in progress, decline to render additional legal services or terminate the attorney-client relationship.

Section 9.        **Support Service and Testimony**.

(a)        If we are asked by you or any Payor to provide support services or testimony in connection with any investigation or litigation, including deposition, trial, arbitration, administrative hearing or similar proceeding, regarding the Matter or our professional services, then the Payors agree to reimburse us at each applicable employee's standard hourly rate then in effect, plus reasonable and documented expenses attributable to such support services or testimony.

(b)        If we are called upon to produce documents, attend depositions or interviews or testify at trial, arbitration, administrative hearing or similar proceeding (whether by subpoena, court process or order or otherwise) regarding the Matter or our professional services, then the Payors agree to reimburse us at the applicable employee's standard hourly rate then in effect, plus reasonable and documented expenses (including reasonable internal and external attorneys' fees and e-discovery consultant fees) attributable to such production, attendance or testimony.

Section 10.        **Informed Consent**.

(a)        Representations of Other Current and Prospective Clients.

(i)        Specific Types of Clients and Representations. As discussed, we are a boutique law firm that represents a significant number of clients, including plan sponsors and appraisers of employee stock ownership plans, in a niche market. You are a professional who serves as a fiduciary of others' employee stock ownership plans in exchange for a fee. You have the responsibility to select and oversee appraisers and to determine the fair market value of employer securities. Because of our substantial experience and significant, nationwide client base in a niche market, such plan sponsors or appraisers likely might have been, then be, or later become, our clients in matters not substantially related to the Matter, including actual or potential transactions or contested matters (i.e. dispute resolution proceedings, litigation and regulatory

**Confidential**
A. Joseph Valdez, Trustee
September 15, 2021
Page 4 of 7



investigations) in which are in involved or have an interest, whether or not such clients' interest are or may become adverse to your interests (collectively, "**Permitted Representations**"). Accordingly, absent your consent, you and such other current and prospective clients may be unable to retain us as counsel and we may be precluded from representing either you or them in current or future matters. We wish to be fair to all of our clients and to assure that you and they have the right and ability to retain us as counsel if you or they so choose. In addition, we believe that you and our prospective clients will derive substantial benefits from your advance consent to Permitted Representations.

        (ii)   <u>Conditions</u>. Your consent is expressly conditioned upon our agreements, hereby confirmed, that (A) we will not represent another client in a matter that is both adverse to you and substantially related to the Matter; and (B) we will not disclose to another client or third party any non-public, confidential and factual information that we obtain from you in connection with our representation of you in the Matter ("**Confidential Information**"), and we will not use it in any manner that is disadvantageous to you or advantageous to another client or third party; <u>provided</u>, <u>however</u>, that you consent to disclosure by us to another former, current or future client of such Confidential Information but only to the extent that we deem it reasonably necessary or appropriate under then-existing circumstances to obtain such other client's informed consent under District of Columbia Rules of Professional Conduct 1.0(e) and 1.7 to any Permitted Representation ("**Permitted Disclosure**").

        (iii)   <u>Informed Consent</u>. You acknowledge that you are sophisticated and an experienced consumer of legal services generally and specifically in deciding whether to consent to a law firm's representation of you and its other current and prospective clients. You acknowledge that you are adequately informed about the existence and nature of the specific types of our current and prospective clients and the specific types of matters in which we currently represent them or may undertake in the future to represent them. You acknowledge that you are adequately informed about the existence and nature of potential conflicts of interest and possible adverse consequences of Permitted Representations, including the possible extra expense and inconvenience if an actual conflict of interest arises and requires that we terminate our representation of you. You acknowledge that you have available to you independent legal counsel to review this <u>Section 10(a)</u> and to advise you as to its scope and effect before deciding whether to consent to our representation of you and our other current and prospective clients. You voluntarily consent to our representation of you and our other current and prospective clients, and you agree not to assert that our representation of other current or prospective clients or our not disclosing to you non-public, confidential and factual information obtained from them or not using it in a manner disadvantageous to them or advantageous to you, is a breach of a duty owed to you by us or our attorneys. You and we intend for our discussion and this <u>Section 10(a)</u> to establish your informed consent to our representation of you and our other former, current and prospective clients under District of Columbia Rules of Professional Conduct 1.0(e) and 1.7(c)(1) and District of Columbia Legal Ethics Opinion 309. Consequently, if you have any questions concerning our current or prospective clients or Permitted Representations, or if you believe that you would benefit from additional information or explanation from us, then please contact us before signing below.



**Confidential**
A. Joseph Valdez, Trustee
September 15, 2021
Page 5 of 7

(iv)    <u>Repudiation of Consent</u>. You may repudiate your consent at any time by giving written notice to us. If you repudiate your consent, then we may, at our option, withdraw from our representation of you in the Matter or any other matter and continue any representation permitted under this <u>Section 10(a)</u>.

(b)    <u>Third Party Payors</u>. As discussed, the Company and the ESOP (collectively, the "**Payors**") are third-party payors of our security retainers, fees, advances, expenses and finance charges. After careful consideration, we have determined that this payment arrangement will not interfere with our independent, professional judgment. You consent to us accepting compensation for representing you from either or both of the Payors. You and we intend for our discussion and this <u>Section 10(b)</u> to establish your informed consent to our representation of you and our acceptance of compensation from the Payors under District of Columbia Rule of Professional Conduct 1.8(e), Comments 10 and 11. Consequently, if you have any questions concerning these payment arrangements, or if you believe that you would benefit from additional information or explanation from us, then please contact us before signing below.

Section 11.    **General Terms**.

(a)    <u>Assignment and Delegation</u>. No Party may assign any of such Party's rights under these Professional Terms, directly or indirectly, voluntarily or involuntarily, including by merger (whether or not such Party is the surviving entity), consolidation, dissolution, operation of law or any other manner, without the express, prior and written consent of each other Party. An assignment of rights does not relieve the assigning Party of such Party's obligation to perform these Professional Terms. No Party may delegate any of such Party's performance under these Professional Terms. Any purported assignment of rights or delegation of performance in violation of this <u>Section 11(a)</u> is void. For clarity, you agree not to assign any action, cause of action or claim (whether in contract, tort or otherwise) you may now or hereafter have against us or our current or future members, managers, officers, employees or independent contractors.

(b)    <u>Successors and Assigns</u>. These Professional Terms bind and benefit the Parties; the heirs, legatees, beneficiaries, executors, administrators, personal representatives and permitted assigns of each Party who is a natural person; and the permitted successors and assigns of each Party that is not a natural person.

(c)    <u>Third Party Beneficiaries</u>. Except as provided in <u>Section 11(b)</u> and this <u>Section 11(c)</u>, these Professional Terms do not and are not intended to confer any enforceable rights or remedies upon any natural person or entity other than the Parties. Each Party agrees that each Arbitration Party is an express, intended third party beneficiary of these Professional Terms with the right to enforce all of the terms contained in these Professional Terms.

(d)    <u>Joint and Several Obligations</u>. The Payors' obligations under these Professional Terms are joint and several.

(e)    <u>Termination and Survival</u>. The effective date of these Professional Terms (the "**Effective Date**") is the earlier of the date you sign below or the date we begin providing

**Confidential**
A. Joseph Valdez, Trustee
September 15, 2021
Page 6 of 7



legal services to you. The date of this Engagement Letter is for reference only. Either you or we may terminate the attorney-client relationship at any time, subject only to applicable law and District of Columbia Rules of Professional Conduct. These Professional Terms, including, for clarity, the Payors' obligations to pay unpaid professional fees, advances, expenses and finance charges, survive the termination of the attorney-client relationship.

(f)     Entire Agreement. These Professional Terms constitute the final agreement among the Parties and the complete and exclusive expression of the Parties' agreement on the matters contained in these Professional Terms. All prior and contemporaneous negotiations and agreements between the Parties on the matters contained in these Professional Terms are expressly merged into and superseded by these Professional Terms. In entering into these Professional Terms, no Party has relied upon any statement, representation, warranty or agreement of any other Party, or any natural person or entity on behalf of such other Party, except for those expressly contained in these Professional Terms.

(g)     Amendment or Modification. No amendment to or modification of these Professional Terms, including this Section 11(g), is effective unless it is expressly identified as an amendment to or modification of these Professional Terms, as applicable, and signed by an authorized representative of each Party.

(h)     Waiver. No waiver under these Professional Terms, including this Section 11(h), is effective unless it is identified as a waiver to these Professional Terms and signed by an authorized representative of the Party waiving its right.

(i)     Construction and Interpretation. Whenever the word "include" or "including" is used, it is deemed to be followed by the words "without limitation," and the word "or" is disjunctive but not exclusive. Each of the Dispute Resolution Procedures, Additional Terms of Engagement and Schedule of Standard Charges is incorporated into this Engagement Letter by this reference as though reproduced verbatim in this Engagement Letter, and each of them is to be construed with, and as an integral part of, this Engagement Letter.

(j)     Counterparts. The Parties may execute this Engagement Letter in multiple counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement.

(k)     Electronic Signatures. Counterparts delivered via electronic mail (including PDF format or any electronic signature complying with the U.S. Federal ESIGN Act of 2000, e.g., *www.docusign.com*) or other transmission method are deemed original signatures and any counterpart so delivered is deemed to have been duly and validly delivered and be valid and effective for all purposes. Each Party irrevocably waives and agrees not to assert any defense to the formation of a contract or enforceability of these Professional Terms by virtue of the use of electronic delivery or electronic signatures to authenticate these Professional Terms.



**Confidential**
A. Joseph Valdez, Trustee
September 15, 2021
Page 7 of 7

     Section 12.    **Alternative Dispute Resolution**. **AS DISCUSSED, YOU AND WE AGREE TO BINDING ARBITRATION IN ACCORDANCE WITH THE ENCLOSED DISPUTE RESOLUTION PROCEDURES**.

     Section 13.    **Representation**. We encourage you to consult independent legal counsel of your choice regarding the scope and effect of these Professional Terms and your decision to grant informed consent to our representation of you before signing below. You acknowledge that you have had a reasonable and meaningful opportunity to seek and obtain such advice.

     Section 14.    **Agreement**. You acknowledge that you have read these Professional Terms in their entirety and understand the scope and effect of all of the terms contained in these Professional Terms, and that you have voluntarily agreed to all such terms only after having the benefit of information necessary to make a fully informed decision.

                          Sincerely,

                          HOLZMAN HORNER PLLC

                          Christopher T. Horner II, Member

ACKNOWLEDGED AND AGREED
WITH INFORMED CONSENT GRANTED
(Engagement Letter, Acknowledgement,
Dispute Resolution Procedures, Additional
Terms of Engagement and Schedule of
Standard Charges):

A. Joseph Valdez, solely in his capacity as
trustee

Date Signed: September 15, 2021

Enclosures:    Acknowledgement
                 Dispute Resolution Procedures
                 Additional Terms of Engagement
                 Schedule of Standard Charges
                 Retainer Invoice
                 Form W-9 Request for Taxpayer Identification Number and Certification

**ACKNOWLEDGEMENT**

## ACKNOWLEDGEMENT

Section 1.     **General**. Reference is made to that certain letter (the "**Engagement Letter**"), dated September 15, 2021, between Holzman Horner PLLC ("**we**," "**us**" or "**our**") and A. Joseph Valdez, solely in his capacity as trustee (the "**Client**"), within which this Acknowledgment is enclosed and incorporated by reference. Capitalized terms used in this Acknowledgment and not otherwise defined in this Acknowledgement have the meanings assigned to such terms in the Engagement Letter.

Section 2.     **Third Party Payor**. The Company acknowledges that it is a third party payor with legal responsibility for the timely payment of security retainers, fees, advances, expense and finance charges incurred by the Client, and that no portion of such obligation is contingent upon the outcome of the Matter.

Section 3.     **Reserved**.

Section 4.     **Reserved**.

Section 5.     **Reserved**.

Remainder of Page Intentionally Blank

Section 6. __Alternative Dispute Resolution__. **THE COMPANY AGREES TO BINDING ARBITRATION IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROCEDURES ENCLOSED WITH THE ENGAGEMENT LETTER**.

Section 7. __Representation__. We encourage the Company to consult independent legal counsel of its choice regarding the scope and effect of these Professional Terms before signing below. The Company acknowledges that it has had a reasonable and meaningful opportunity to seek and obtain such advice.

Section 8. __Agreement__. The Company acknowledges that it has read these Professional Terms in their entirety and understands the scope and effect of all of the terms contained in these Professional Terms, and that it has voluntarily agreed to all such terms only after having the benefit of information necessary to make a fully informed decision.

ACKNOWLEDGED AND AGREED
(Engagement Letter, Acknowledgement,
Dispute Resolution Procedures, Additional
Terms of Engagement and Schedule of
Standard Charges):

ASPEN ELECTRONICS
MANUFACTURING, INC.,
a Colorado corporation

*Giao Le*

Giao Le, President

Date Signed: September 15, 2021

Mailing Address:

8975 Marshall Ct. Unit 100

CO 80031

**DISPUTE RESOLUTION PROCEDURES**

## DISPUTE RESOLUTION PROCEDURES

Section 1.        **Acknowledgement**. Each Arbitration Party acknowledges that: (a) such Arbitration Party is experienced in making legal decisions with respect to choices of forum and dispute resolution alternatives and procedures, including arbitration and litigation; (b) such Arbitration Party has read carefully and understands the scope and effect of the terms contained in these Dispute Resolution Procedures; and (c) such Arbitration Party has agreed to all such terms only after: (i) having been provided a reasonable and meaningful opportunity not only to seek and to obtain the advice of independent legal counsel of such Arbitration Party's choice with respect to such terms, but also to negotiate such terms; and (ii) the benefit of both (A) the information necessary to make a fully informed decision and (B) adequate information and explanation about the material risks of and reasonably available alternatives to such terms.

Section 2.        **District of Columbia Legal Ethics Opinion 376 and American Bar Association Formal Opinion 02-425 Disclosures and Acknowledgement**. Each Arbitration Party acknowledges that: (a) arbitration may involve substantial upfront costs compared to litigation (we encourage each Arbitration Party to read the Arbitration Schedule of Fees and Costs which c be accessed by following this hyperlink: https://www.jamsadr.com/arbitration-fees); (b) such Arbitration Party is waiving rights to have any disputes, controversies or claims heard or tried in court before a judge or jury; (c) such Arbitration Party is waiving rights to an appeal that customarily would be available in a judicial proceeding but that may be limited or unavailable with binding arbitration; and (d) such Arbitration Party potentially is waiving the right to take discovery to the full extent permitted under applicable court rules and codes of civil procedure. Furthermore, each Arbitration Party acknowledges that such Arbitration Party has been fully apprised of the advantages and disadvantages of each of the terms contained in these Dispute Resolution Procedures and has been given sufficient information to permit such Arbitration Party to make an informed decision about whether to agree to such terms.

Section 3.        **District of Columbia Rule of Professional Conduct 1.8(g)(1) Limitation**. Nothing in these Dispute Resolution Procedures is to be construed or interpreted in a manner to prospectively limit our liability to you for professional malpractice.

Section 4.        **Professional Conduct Grievances**. Nothing in these Dispute Resolution Procedures is to be construed or interpreted to impinge upon an Arbitration Party's right to make a disciplinary complaint before the District of Columbia Office of Disciplinary Counsel or other disciplinary authorities.

Section 5.        **Fee Disputes**.

(a)        Agreement to Arbitrate Fee Disputes. If you believe that the professional fees, expenses, advances or finance charges indicated in any statement are erroneous or unreasonable for any reason, then you agree to give us written notice within 10 calendar days after receipt of such statement, identify the specific time entries (or expenses, advances or finance charges) being disputed and provide the basis for your belief. If you fail to give us written notice within such 10 calendar day period or fail to identify such specific time entries (or expenses, advances or finance charges) or provide the basis for your belief, then the Payors agree that all professional fees, expenses, advances and finance charges indicated in such statement (including

previous balances) are conclusively deemed accurate and reasonable for all purposes, including resolution of any dispute, controversy or claim regarding our billing practices or any portion of professional fees, expenses, advances or finance charges (collectively, "**Fee Disputes**"). If any Fee Dispute arises, then the Payors agree immediately to pay all undisputed amounts, and the Payors agree that any and all Fee Disputes are to be resolved, exclusively, by binding arbitration in accordance with this <u>Section 5</u> and <u>Section 6</u> of these Dispute Resolution Procedures. For clarity, this <u>Section 5</u> does not apply to Legal Disputes other than Fee Disputes.

   (b) <u>District of Columbia Rule of Professional Conduct 1.5 Acknowledgements</u>.

    (i) <u>Reasonableness</u>. You agree that our representation of you will require significant professional time and is anticipated to present novel or difficult questions of law, requiring significant skill from our legal professionals. You agree that undertaking representation of you will preclude us from undertaking representation of other prospective clients, and that the fee arrangement contained in these Professional Terms is customary for similar legal services in the District of Columbia. You agree that our representation of you involves a significant amount, and that you and others desire that we affect our representation of you in the Matter in the most expedient manner reasonably available. Finally, you agree that the legal professionals anticipated to perform legal services on your behalf have significant experience, an excellent reputation and demonstrated ability to perform the legal services necessary to fulfill the scope and nature of our representation of you.

    (ii) <u>Fee Arrangement</u>. You agree that the arrangements in respect of professional fees, expenses, advances and finance charges identified in these Professional Terms are reasonable, clear and unambiguous. You agree that these Professional Terms clearly and unambiguously explain the limited scope and nature of our representation, how professional fees will be calculated, what expenses and advances there may be in addition to our professional fees and how and when you will be expected to pay our professional fees, expenses, advances and finance charges.

   (c) <u>Permitted Plan Expense</u>. The Payors agree that, regardless of any incidental benefit received by any employee benefit plan sponsor, our fees, advances, expenses and finance charges are intended to qualify as reasonable expenses of administering an employee benefit plan in accordance with United States Department of Labor Advisory Opinions 1997-03A and 2001-01A and related guidance, and that payment by the ESOP of our fees, advances, expenses and finance charges will not violate the terms of its organizational documents or applicable law.

   (d) <u>Time Limitation</u>. Solely with respect to Fee Disputes, the evidentiary hearing on the merits is to commence within 90 calendar days after service of the arbitration demand, and the arbitrator shall render a final award within 10 calendar days after the close of the hearing on the merits.

   (e) <u>Default and Default Award</u>. The arbitrator shall enter an Arbitration Party's default and shall enter a default award in accordance with Federal Rule of Civil Procedure 55.

(f)     <u>Burden of Persuasion</u>. You agree that you (not we) will have the burden of persuasion to establish that the disputed portion of our professional fees, expenses, advances and finance charges is erroneous or unreasonable.

(g)     <u>Interest</u>. The arbitrator shall award interest on any amount awarded to us computed at a rate of 2% simple interest per calendar month from the date of the applicable statement(s), and any judgement into which an arbitration award is confirmed is to accrue interest during the post-judgment period computed at a rate of 2% simple interest per calendar month.

(h)     <u>Attorney's Fees and Expenses</u>. If any Payor breaches these Professional Terms by failing to pay any professional fees, expenses, advances or finance charges when due hereunder, and we bring an arbitration or court action against such Payor in furtherance of collecting such amounts, then we are entitled to receive, and such Payor shall pay, in addition to all other rights or legal or equitable remedies to which we may be entitled, as costs and not as an element of damages, all costs and expenses (including reasonable internal and external attorneys' fees, investigative fees, and expert witness fees), whether or not taxable, incurred by us incident to: (i) such action (whether or not prosecuted to final judgment); (ii) post-judgment proceedings; (iii) appellate proceedings; (iv) contempt proceedings; (v) garnishment, levy and debtor and third party examinations; (vi) discovery; and (viii) insolvency proceedings. Our right to receive such amounts is deemed to accrue at the commencement of such arbitration or court action and such amounts are recoverable in the underlying action or a separate action instituted for such purpose. The Payors intend this **Error! Reference source not found.** to be severable and to survive the merger of these Professional Terms into any judgment. The Payors agree that this **Error! Reference source not found.** represents a bargained-for-exchange, is unilateral, applies only to Fee Disputes and does not apply to Legal Disputes (including malpractice actions) brought against us. The arbitrator in any Fee Dispute shall include in any final award an award of costs and expenses in accordance with this **Error! Reference source not found.**.

Section 6.     **Other Disputes, Controversies or Claims**.

(a)     <u>Agreement to Arbitrate Other Disputes, Controversies and Claims</u>. Each Arbitration Party agrees that any and all disputes, controversies or claims whatsoever (whether in contract, tort or otherwise) arising out of or relating to the relationship between or among the Client Arbitration Parties, on the one hand, the Company Arbitration Parties on the other hand, or the Firm Arbitration Parties on the other hand, including the attorney-client relationship, these Professional Terms, the negotiation, execution or performance of these Professional Terms (including any representation made in, in connection with or as an inducement to enter into these Professional Terms) or our legal services (collectively "**Legal Disputes**") are to be resolved, exclusively, by binding arbitration in accordance with this <u>Section 6</u> (and not <u>Section 5</u> of these Dispute Resolution Procedures, except, exclusively, in the case of Fee Disputes).

(b)     <u>Parties Bound by Agreement to Arbitrate</u>. You accept the agreement to arbitrate on behalf of yourself, and, to the maximum extent permitted by law, on behalf of (i) the ESOP, (ii) its current and future participants and their beneficiaries and (iii) its current and future fiduciaries (including successor trustees) (collectively, the "**Client Arbitration Parties**"). The Company accepts the agreement to arbitrate on behalf of itself, and, to the maximum extent permitted by law, as principal, on behalf of its current and future affiliates and its and their

respective current and future shareholders, members, partners, directors, managers, officers, employees and independent contractors, as agents (collectively, the "**Company Arbitration Parties**"). We accept the agreement to arbitrate on behalf of ourselves, and, to the maximum extent permitted by law, as principal, on behalf of our current and future members, managers, officers, employees and independent contractors, as agents (collectively, the "**Firm Arbitration Parties**," and together with the Client Arbitration Parties and the Company Arbitration Parties, the "**Arbitration Parties**").

(c)       Scope of Agreement to Arbitrate. The following is a non-exclusive list of matters subject to binding arbitration: Fee Disputes, negligence (whether active, passive, ordinary, sole, concurrent, contributory or otherwise), professional malpractice, breach of fiduciary duty, knowing participation in the breach of a fiduciary duty of another, fraud, fraudulent concealment, fraudulent inducement, conspiracy to commit fraud, misrepresentation (whether negligent, intentional or otherwise), detrimental reliance, bad faith, aiding and abetting unlawful conduct of another, breach of contract (whether express, implied or otherwise), promissory estoppel, breach of any implied covenant of good faith and fair dealing, disgorgement of unjust enrichment, forfeiture, *quantum meruit*, common law tort claims for contribution or indemnification, federal or state statutory claims to the extent permitted by law, *respondeat superior*, claims asserting status as a third-party beneficiary of your and our attorney-client relationship, disputes over the quality of our legal services, claims relating to or arising out of your or our performance under these Professional Terms, and other claims arising out of any actual alleged act or omission by any Arbitration Party.

(d)       Administration of Arbitration. The arbitration is to be administered by JAMS pursuant to its then-existing Streamlined Arbitration Rules and Procedures, which can be accessed through the following hyperlink: https://www.jamsadr.com/rules-streamlined-arbitration or can be provided to you by us upon your written request (the "**JAMS Rules**"). We encourage you to read the JAMS Rules before signing the Engagement Letter. If an express conflict exists between any JAMS Rule and any term contained in these Professional Terms, then the term contained in these Professional Terms controls.

(e)       Appointment of Arbitrator. The arbitration is to be conducted before a single, neutral arbitrator selected in accordance with the JAMS Rules. The arbitrator is to be either (A) a retired judge or justice of the Superior Court of the District of Columbia or United States District Court for the District of Columbia with at least five years of service as a judge or justice, or, if such candidate does not exist, then (B) a retired judge or justice with substantial experience adjudicating matters under the Employee Retirement Income Security Act of 1974 ("**ERISA**"). No candidate may serve as an arbitrator unless such candidate has agreed in writing to abide by and be bound by these Professional Terms.

(f)       Venue. The arbitration is to be conducted, exclusively, in the District of Columbia.

(g)       Governing Law. Each Arbitration Party agrees that these Professional Terms are negotiated, made and entered into in the District of Columbia and are to be performed substantially within the District of Columbia. Each Arbitration Party acknowledges that we practice principally in the District of Columbia. Each Arbitration Party specifically intends that

our conduct will have its predominant effect in the District of Columbia, and not in the State of Colorado or any other jurisdiction. Each Arbitration Party agrees that your and our attorney-client relationship has a substantial relationship to the District of Columbia. The laws of the United States of America, if and to the extent applicable, and the laws of the District of Columbia (including its statutes of limitations), without regard to the principles or rules of conflict of laws of the District of Columbia, the State of Colorado or any other jurisdiction, govern these Professional Terms, the negotiation, execution or performance of these Professional Terms (including any representation made in, in connection with or as an inducement to enter into these Professional Terms) and any and all Legal Disputes. Each Arbitration Party knowingly, irrevocably and unconditionally waives and agrees not to assert that application of the substantive laws of the District of Columbia (including its statutes of limitations) would violate a fundamental public policy of the State of Colorado or any other jurisdiction with a potentially more substantial interest in any particular issue than the District of Columbia.

(h)     <u>Scope of Arbitrator's Authority</u>.

(i)     <u>Federal Arbitration Act</u>. Each Arbitration Party agrees that these Professional Terms evidence a transaction in interstate commerce. The Federal Arbitration Act governs these Dispute Resolution Procedures. The arbitrator shall decide any issue regarding the extent to which any Legal Dispute is subject to arbitration, or concerning the applicability, construction or interpretation, validity, legality or enforceability of these Dispute Resolution Procedures.

(ii)     <u>Power of the Arbitrator</u>. The arbitrator shall decide any and all Legal Disputes in accordance with the substantive laws of the District of Columbia (including its statutes of limitations). The arbitrator shall have the power to make any award or impose any remedy that could be made or imposed by the Superior Court of the District of Columbia applying the substantive laws of the District of Columbia. The arbitrator is expressly prohibited from allocating arbitration fees and arbitrator compensation and expenses, except, and solely to the extent, permitted by JAMS Rule 26(c) and <u>Section 6(i)</u> of these Dispute Resolution Procedures or as required by statute or other applicable law.

(i)     <u>Consent to Submit to Non-Exclusive Jurisdiction and Venue</u>. Each Arbitration Party, for such Arbitration Party, and for such Arbitration Party's properties, (A) irrevocably consents, generally and unconditionally, to submit to the non-exclusive jurisdiction and venue of the Superior Court of the District of Columbia (the "**Permitted Court**") for all purposes in connection with arbitration, including to compel arbitration, to grant provisional remedies in aid of arbitration and to confirm, vacate or enforce any arbitration award (collectively, "**Permitted Court Actions**"); and (B) irrevocably and unconditionally waives, to the maximum extent permitted by law, any objection which such Arbitration Party now or hereafter has to the laying of venue of any Permitted Court Action in the Permitted Court or that any Permitted Court Action which has been brought in a Permitted Court has been brought in an inconvenient forum.

(j)     <u>Consent to Service of Process</u>. Each Arbitration Party irrevocably consents to the service of process outside of the territorial jurisdiction of the Permitted Court in any such Permitted Court Action by mailing copies of such process by certified or registered mail (in each case, return receipt requested, postage pre-paid) to the address to which the Engagement Letter is

addressed, in the case of a Client Arbitration Party, or to the address set forth on the Acknowledgement, in the case of a Company Arbitration Party. Service of process in such manner is deemed complete on the tenth (10th) calendar day after such mailing. This Section 6(j) does not affect an Arbitration Party's ability to serve process in any other manner permitted by applicable law.

   (k) Retainers, Case Management Fees and Other Fees of JAMS and the Arbitrator. If an Arbitration Party fails to deposit or pay such Arbitration Party's pro rata share of any retainer, case management fee or other fee of JAMS or the arbitrator as set forth in the JAMS fee schedule then in effect, then, within 10 calendar days after the expiration of the time to make such deposits or payments, the arbitrator shall issue an interim decision and award permanently precluding such failing Arbitration Party from offering evidence of any affirmative claim and awarding against such failing Arbitration Party all deposits or payments voluntarily advanced by any non-failing Arbitration Party. The arbitrator shall provide in such interim decision and award for the recovery of interest computed at a rate of 2% simple interest per calendar month from the date of the award and all reasonable attorneys' fees and costs incurred by an Arbitration Party to confirm the award and enforce and collect any judgment into which the award is confirmed.

   (l) Time Limitations. No demand for arbitration may be made after the date when the institution of legal or equitable proceedings would be barred by the applicable statute of limitation.

  Section 7. **Confidentiality**. All arbitrations are to be kept strictly confidential. The existence of any arbitration and any and all elements of it (including this Section 7) are not to be disclosed to anyone other than the arbitrator, the Arbitration Parties actually party to the arbitration and their respective counsel, and anyone reasonably necessary to the conduct of the arbitration; provided, however, that disclosure may be made as required by law or to the extent legally necessary to enforce the rights arising out of the arbitration.

  Section 8. **Severability**. If a tribunal of competent jurisdiction determines that any term contained in these Dispute Resolution Procedures, including this paragraph, is invalid, illegal or unenforceable, then such term is excluded solely to the extent of such invalidity, illegality or unenforceability, all other terms remain in full force and effect, and the invalid, illegal or unenforceable term is deemed replaced by a term that is valid, legal and enforceable and results in an arbitrator (as opposed to a court) determining any and all disputes, controversies or claims, to the maximum extent permitted by applicable law and the District of Columbia Rules of Professional Conduct.

Remainder of Page Intentionally Blank

**ADDITIONAL TERMS OF ENGAGEMENT**

## ADDITIONAL TERMS OF ENGAGEMENT

Section 1.       **The Firm**.

(a)       <u>Professional Limited Liability Company</u>. We are a professional limited liability company organized under the laws of the District of Columbia with a principal executive office in the District of Columbia.

(b)       <u>Professional Liability Insurance</u>. We maintain professional liability insurance coverage applicable to the legal services to be rendered.

Section 2.       **The Attorney-Client Relationship**.

(a)       <u>Obligations</u>.

(i)       <u>Our Obligations</u>. We agree to provide the legal services described in the Engagement Letter and to represent your interests consistent with legal and ethical requirements. We will endeavor to keep you informed of the progress of the Matter and respond to your inquiries.

(ii)       <u>Your Obligations</u>. You agree promptly to provide us with any and all information relevant to the Matter and related matters, and you agree that all such information provided by you and your agents and representatives to us will not contain any untrue statement of fact or omit to state a fact necessary in order to make the statements contained in such information not misleading. You agree to cooperate with us during the course of our representation of you and timely to respond to our requests for information and direction from you. You agree promptly to advise us of developments affecting you, the Matter or related matters. You agree to pay professional fees, advances, expenses and finance charges indicated on your statements on a timely basis. You are responsible for advising us whether any document we have prepared or received and sent to you for your approval reflects the principal terms of your proposed agreement, general strategy or other expectations, as the case may be. Finally, you acknowledge that our ability to provide legal services consistent with legal and ethical requirements and to fulfill the scope and nature of our representation of you is expressly conditioned upon your performance of your obligations.

(b)       <u>Other Counsel and Professionals</u>. We will strive to work efficiently and effectively with all other counsel and other professionals that you choose to retain from time to time. We expressly disclaim any responsibility or liability for the selection, appointment, supervision or performance of other counsel or other professionals.

Section 3.       **Scope and Nature of Our Representation**.

(a)       <u>Legal Services</u>. We provide only legal services; we do not provide non-legal services, including financial or tax accounting or reporting, investment advising or management, fiduciary services in respect of employee benefit plans, appraisals or valuation-related services, investment banking or broker-dealer services, personal or business finance, insurance brokerage or consulting, employee benefit plan administration or other non-legal service. We expressly

disclaim any duty or responsibility for the selection, supervision or performance of such others, which provide such non-legal services to you. You acknowledge that we do promote, sell or solicit for sale securities, real estate or other investments. You further acknowledge that we do not recommend, represent or opine concerning specific investment advice, and we expressly disclaim any duty or responsibly based upon or arising out of the recommendations, representations or opinions of others.

(b)     <u>Disclaimer of Fiduciary Status</u>. You agree that you specifically intend that none of us or our current or future members, managers, officers, employees or independent contractors will be a "fiduciary," as defined in ERISA Section 3(21), or a "co-fiduciary," as defined in ERISA Section 405, with respect to your employee stock ownership plan.

(c)     <u>No Guarantee</u>. During the course of our representation of you, our professionals may express opinions or beliefs to you about the effectiveness of various courses of action or about the results that might be anticipated. Such statements are expressions of opinion only and should not be construed or interpreted as promises or guarantees.

(d)     <u>Matters and Subject Matters</u>. You agree that these Professional Terms apply to any and all matters and subject matters to which the scope and nature of our representation or our legal services are alleged or claimed to extend.

Section 4.     **Billing Policies**.

(a)     <u>Computation of Professional Fees</u>. Professional fees are computed by multiplying the time expended by our attorneys and staff members by their respective hourly rates.

(b)     <u>Statement Presentation</u>. Professional time will be recorded and billed in increments of one-tenth of one hour. Professional time will be cumulated into one, daily entry for each attorney or staff member. Professional time spent performing services includes meetings with you and others; traveling; considering, drafting, reviewing and revising documents, pleadings and other papers; legal and factual research; reviewing and analyzing information; consulting with you and others, including other attorneys and staff members within the firm and those outside of the firm; written and electronic correspondence; and making and receiving telephone calls to and from you and others, including other attorneys and staff members within the firm.

(c)     <u>Basis for Hourly Rates</u>. Each Payor agrees that our hourly rates are reasonable. Hourly rates are based, in part, upon (i) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform legal service properly; (ii) the likelihood that the acceptance of the proposed representation will preclude other representations; (iii) the fee customarily charged in the District of Columbia for similar legal services; (iv) the amount involved and results obtained; (v) the limitations imposed by the client or the circumstances; (vi) the nature and length of the professional relationship with the client; (vii) the experience, reputation and ability of the attorney or staff member performing services; and (viii) whether the aggregate fee is fixed or contingent.

(d)     <u>Adjustments to Hourly Rates</u>. Hourly rates are periodically reviewed and adjusted. New rates will be applied to you upon adoption and reflected in your next statement.

Section 5.     **Communications and Information Management**.

(a)     Electronic Data, Communication and Storage. To facilitate our provision of legal services to you, we may communicate with you or others by electronic mail, send data over the internet, store electronic data hosted remotely on the internet or allow access to data through third party vendors' secured portals or clouds. Your confidential information may be transmitted or stored using these methods. We make reasonable efforts to keep such communications and data access secure in accordance with our obligations under applicable law and the District of Columbia Rules of Professional Conduct. You acknowledge that we have no control over the unauthorized interception or breach of any communication or data once it has been sent or has been subject to authorized access, notwithstanding reasonable security measures utilized by us or our third party vendors. You consent to our use of these electronic devices and application and submission of your confidential information to third party service providers during the course of our representation of you.

(b)     Confidentiality of Communications.

(i)     Confidential and Attorney-Client Privileged Communications. Communications between or among you, on the one hand, and us and our professionals, on the other hand, are confidential and may also be subject to the attorney-client privilege, which means that no one else would be entitled to know the contents of such communications. If privileged communications are shared with any third party, the attorney-client privilege may be lost and the communications may be required to be disclosed to an opposing party or others. In order to protect the confidential nature of our communications with you, we ask that you refrain from sharing or relating our communications with you to a third party. If you are uncertain as to whether you should make a disclosure to a third party, we ask that you consult with us so that we can determine whether any information should be disclosed and, if so, whether such information should be provided by you or us.

(ii)     Exception to the Attorney-Client Privilege Protections. It is important to us that you are cognizant of the potential that, if a court determines that your and our otherwise privileged communications concerning plan administration are subject to the "fiduciary exception" to the attorney-client privilege, then such communications may be required to be disclosed to plan participants or beneficiaries.

(iii)     Communication Security. We advise you to refrain from communicating with us on any unsecure device or any computer, smart phone, tablet computer, or other device shared with someone else. In addition, when communicating with us, please do not use a shared electronic mail account. You should utilize only a private electronic mail account that is password protected and accessed solely by you when you communicate with us. We further advise that any communication or posting that you make on a social media site, such as Facebook, LinkedIn or Twitter, for example, may be subject to discovery, even in a private or restricted access security setting. Similarly, any electronic mail, short message service (i.e. text), or other type of communication that you send to a third party may be subject to discovery as well. In order to protect the confidential nature of our communications with you, please be thoughtful about what you decide to post or write and refrain from making any communications to others about the communications between you and us.

(c)     Document Retention Policy. We will return your original documents and property to you upon the later of (i) the termination of your and our attorney-client relationship (unless such original documents and property are relevant to another matter with respect to which we continue to represent you) and (ii) upon payment in full for all due and unpaid professional fees, advances, expenses and finance charges, subject only to District of Columbia Rules of Professional Conduct. At such later time, you will have the opportunity to request to receive the remainder of your client file, including attorney work product. We maintain files only in electronic format. If you request to receive your remaining file from us, then we will provide your file to you via hyperlink within 30 calendar days of such request. If you decide not to request your remaining file at such later time, then you authorize us to destroy your remaining file in accordance with District of Columbia Rules of Professional Conduct and District of Columbia Legal Ethics Opinion 283. We reserve the right to make copies of your file, at our expense, for our own information and retention purposes. If all or any portion of your file becomes the subject of a subpoena, discovery request or other disclosure obligation while in our possession, including after termination of the attorney-client relationship, then the Payors agree to pay an amount equal to the time expended by our attorneys or staff members, multiplied by their respective hourly rates identified in the Engagement Letter, and all costs incurred to perform our obligations in respect of such subpoena, discovery request or other disclosure obligation.

(d)     Our Counsel. We have both internal and external counsel who advise our professionals about their ethical, professional and legal duties. From time to time, our professionals may consult such counsel about the Matter and other matters. You acknowledge that such communications are protected from disclosure to you by the attorney-client privilege between our counsel and us. You acknowledge that any such communications are not part of your client file, and that you waive any right to obtain discovery of such communications.

Section 6.     **Insurance Matters**.

(a)     Limited Scope and Nature of our Representation. It is important to us that you clearly understand the limited scope and nature of our representation as it pertains to insurance matters at the outset and during the course of our representation of you. Although we will be pleased to assist you in assessing the potential for fiduciary liability coverage under any policy of insurance you may have, the limited scope and nature of our representation of you does not include advising you with respect to the existence or availability of fiduciary liability coverage for the Matter unless you provide us with complete copies of your current insurance policies (including underlying insurance applications, warranty letters, declarations pages and all endorsements) and expressly request our counsel on the potential coverage available under such policies. We will counsel you only with respect to fiduciary liability coverage (no other coverage of any kind) only on your behalf (not on behalf of any other insured or potential insured), and only as such fiduciary liability coverage relates to an employee stock ownership plan (not any other employee benefit plan, non-qualified deferred compensation plan or other plan).

(b)     Representation. We encourage you to consult with insurance policyholder coverage counsel of your choice and an insurance agent competent with respect to insurance matters affecting you and of your choice before signing the Engagement Letter, during the course of our representation of you and before binding any type of insurance coverage.

(c)      <u>Your and Your Agent's Responsibilities</u>. You or your insurance agent (not we) is responsible for ensuring that the statements in any application for insurance, including fiduciary liability insurance, and any attachments, materials or information submitted with any such application, including warranty letters, are true and complete in all respects (even if we undertake to assist you or your insurance agent in preparing such application for insurance). You or your insurance agent (not we) is responsible for conveying bind orders to insurers and ensuring that all subjectivities to binding coverage have been satisfied. You or your insurance agent (not we) is responsible for providing notice of claims, potential claims, the election of extended reporting periods, the occurrence of a change of control, and all other matters for which notice is required in accordance with the terms and conditions of applicable policies of insurance maintained by you. We do not make any representation of any kind to you about whether you will be able to obtain fiduciary liability coverage or whether any fiduciary liability coverage term will respond to a particular claim, loss or expense.

(d)      <u>District of Columbia Rule of Professional Conduct 1.6 Acknowledgement</u>. You authorize us to disclose otherwise confidential factual information about you to a third party insurance agent for the sole purpose of obtaining quotations in respect of fiduciary liability coverage.

(f)      <u>Questions</u>. If you have any questions regarding the limited scope and nature of our representation as it pertains to insurance matters, then please contact your Firm liaison in the first instance so that he may address your questions promptly.

Remainder of Page Intentionally Blank

**SCHEDULE OF STANDARD CHARGES**

## SCHEDULE OF STANDARD CHARGES

| Description | Charge | Basis | Statement Presentation |
|---|---|---|---|
| Technology Fee | $300 | One-time charge | Technology Fee |
| Printing Charges | $1.00 | Per page | Photocopy Charge |
| Transcription | $1.00 | Per minute | Transcription Fees |
| Photocopying Charges | $0.20 | Per page | Photocopy Charge |
| Mileage | $0.58 | Per mile | Mileage To/From |
| Postage | Cost | Cost | Postage |
| Travel Expenses (Meals, Transportation and Lodging) | Cost | Cost | Travel Expense |
| Facsimile Charges | $2.00 | Each transmitted page | Facsimile Cost |
| Computer Assisted Legal Research | Cost | Cost | Online Legal Research |
| Filing Fees | Cost | Cost | Filing Fee |
| Outside Professional Fees | Cost | Cost | Outside Professional Fee |

**RETAINER INVOICE**

**IMPORTANT NOTICE**

**PRIOR TO SENDING ANY WIRE OR ELECTRONIC TRANSFER OF FUNDS TO US, THE PAYOR MUST CONTACT US AT (202) 618-3402 TO VERIFY THE WIRE OR ELECTRONIC TRANSFER INSTRUCTIONS.**

**WE WILL NOT CHANGE WIRE OR ELECTRONIC TRANSFER INSTRUCTIONS.**

**IF ANY PAYOR RECEIVES WIRE OR ELECTRONIC TRANSFER INSTRUCTIONS FOR A DIFFERENT BANK, BRANCH LOCATION, ACCOUNT NAME, ACCOUNT NUMBER OR OTHER CHANGE, THE CHANGE IN WIRE OR ELECTRONIC TRANSFER INSTRUCTIONS SHOULD BE PRESUMED TO BE FRAUDULENT. DO NOT SEND ANY FUNDS AND CONTACT YOUR FIRM LIAISON IMMEDIATELY.**

**FAILURE TO FOLLOW THIS PROCEDURE ENDANGERS PAYOR FUNDS.**



ACCOUNTS RECEIVABLE DEPARTMENT
1300 I STREET, N.W., SUITE 400E
WASHINGTON, D.C. 20005

E-MAIL: info@holzmanhorner.com
DIRECT: (202) 618-3402
FACSIMILE: (202) 905-2156

September 15, 2021

**CONFIDENTIAL**
**Via E-mail: ajv55@msn.com**

A. Joseph Valdez, Trustee
855 W. Mulberry Street
Louisville, CO 80027

A. Joseph Valdez, Trustee
Aspen Electronics
Manufacturing, Inc. ESOP

*Retainer:*

| | |
|---|---|
| Future Professional Fees: | $15,000.00 |
| Current Advances and Expenses: | $0.00 |
| **Total This Invoice:** | **$15,000.00** |

**Remittance Paid by Wire Transfer**

Bank of America
222 Broadway
New York, NY 10038
Account: Holzman Horner PLLC
Account # 435036490110
ABA Transit # 026009593

**Remittance Paid by ACH Electronic Transfer
or Electronic Funds Transfer**

Bank of America
222 Broadway
New York, NY 10038
Account: Holzman Horner PLLC
Account # 435036490110
ABA Transit # 051000017


## HOLZMAN | HORNER
A PROFESSIONAL LIMITED LIABILITY COMPANY

ACCOUNTS RECEIVABLE DEPARTMENT
1300 I STREET, N.W., SUITE 400E
WASHINGTON, D.C. 20005

E-MAIL: info@holzmanhorner.com
DIRECT: (202) 618-3402
FACSIMILE: (202) 905-2156

### REMITTANCE ADVICE

**CONFIDENTIAL & ATTORNEY-CLIENT
PRIVLEDGED COMMUNICATION**

September 15, 2021

A. Joseph Valdez, Trustee
Aspen Electronics
Manufacturing, Inc. ESOP

Holzman Horner PLLC
Attention: Accounts Receivable
1300 I Street N.W., Suite 400E
Washington, D.C. 20005

*Retainer:*

| | |
|---|---:|
| Future Professional Fees: | $15,000.00 |
| Current Advances and Expenses: | $0.00 |
| **Total This Invoice:** | **$15,000.00** |

### INVOICE IS DUE AND PAYABLE UPON RECEIPT

### PLEASE RETURN THIS PAGE WITH YOUR REMITTANCE

**FORM W-9 REQUEST FOR TAXPAYER IDENTIFICATION NUMBER
AND CERTIFICATION**